107 So.2d 247 (1958)
Earl Jake JACKSON, Appellant,
v.
STATE of Florida, Appellee.
No. 381.
District Court of Appeal of Florida. Second District.
August 27, 1958.
Rehearing Denied October 21, 1958.
*248 Rosenhouse & Rosenhouse, Carr & O'Quin, Miami, for appellant.
Richard W. Ervin, Atty. Gen., and Irving B. Levenson, Asst. Atty. Gen., for appellee.
ALLEN, Acting Chief Judge.
Earl Jake Jackson was found guilty of rape and recommended to mercy. Motion for new trial was denied and on May 20, 1957, he was adjudged guilty and sentenced to life imprisonment, from which judgment and sentence this appeal was taken.
The appellant is 28 years of age and the prosecutrix is 67 years of age. The two were acquainted with each other, having met in a bar in Lake Worth several weeks previous to the offense. At about 7:00 P.M. on the night of the alleged rape, appellant entered the Silver Dollar Bar to cash a check. The prosecutrix and the appellant had drinks at the bar and left together in defendant's truck. Beginning with the reason for leaving the bar together, the testimony of defendant and prosecutrix is completely conflicting as is usual in a case of this sort. However, such conflicts are left for discussion under the first question raised by this appeal.
After leaving the bar in defendant's truck, defendant and prosecutrix turned off the paved street onto a sandy road. It was on this road that the alleged crime took place. Prosecutrix then walked back to the paved road and obtained a ride to a telephone. She called the police and reported that she had been raped. The officers arrested defendant as he was driving his truck along the sand road toward the paved road.
The appellee, in its brief, states three points as follows:
"Point I.  Whether or not the evidence is sufficient to sustain the jury's verdict of guilty and the trial court's judgment of conviction for the crime of rape in regard to the element of the prosecutrix's resistance and lack of consent?"
"Point II.  Whether or not an appellant in a criminal case can attack the court's refusal to charge the jury in reference to a particular request when the appellant fails to present an objection in the trial court prior to the jury's retiring to consider its verdict and where such objection is raised for the first time in a motion for a new trial?"
"Point III.  Whether or not an abuse of judicial discretion occurred in violation of Florida Statutes, Chapter 919.05 [F.S.A.], when the trial court declined the jury's request to hear `some testimony again' after it had retired to consider its verdict?"
As a subsidiary to Point II, the Court states the following question:
(II.a) Whether, under the facts in this case, it was reversible error for the court to refuse to give the following charge:
"Gentlemen of the Jury, I charge you `That some of the evidence produced by the State has been that kind of evidence known as circumstantial evidence. Circumstantial evidence should be received and acted upon with caution, and before you are warranted in convicting the defendant, Earl Jake Jackson, upon circumstantial evidence, there should be such a well connected and unbroken chain of circumstances as to exclude all other reasonable hypotheses but guilt. "Hypothesis" means supposition or theory. The circumstances must not only be consistent with guilt, but they must be inconsistent with innocence. In other words, the circumstances must point *249 directly to the guilt of the defendant; and if they point just as reasonably to the innocence of the defendant, you must acquit the defendant.'"
We shall discuss Point I, supra, first. Chapter 794.01, Florida Statutes, F.S.A., defines rape as follows:
"Whoever ravishes and carnally knows a female of the age of ten years or more, by force and against her will * * *. It shall not be necessary to prove the actual emission of seed, but the crime shall be deemed complete upon proof of penetration only."
Thus it shall be seen that the elements of the crime are, first, carnal knowledge and, second, that the act was perpetrated against the will of the victim.
The carnal act must be committed against the resistance of a woman. The facts in practically every case cited are different, and the cases are not consistent about the manner or degree of resistance that is necessary. The importance of resistance is to establish the lack of consent on the part of the prosecutrix. Resistance is a relative term and must be considered in accordance with the special circumstances surrounding each and every case.
In Green v. State, 1938, 135 Fla. 17, 184 So. 504, 505, the Florida Supreme Court affirmed the conviction of the appellant of rape. In its opinion, the Court quoted from Baldwin's Century Edition of Bouvier's Law Dictionary as follows:
"The knowledge of the woman's person must be forcibly and against her will; and if her consent has not been voluntarily and freely given (when she has the power to consent), the offense will be complete, nor will any subsequent acquiescence on her part do away the guilt of the ravisher. A consent obtained from a woman by actual violence, by duress or threats or murder, or by the administration of stupefying drugs, is not such a consent as will shield the offender or turn his crime into adultery or fornication;"
The Court further said in its opinion:
"In Doyle v. State, 39 Fla. 155, 22 So. 272, 63 Am.St.Rep. 159, this Court defined rape as follows:
"`Consent of the woman from fear of personal violence is void, and, though a man lays no hands on a woman, yet if, by array of physical force, he so overpowers her that she dares not resist, his carnal intercourse with her is rape.'"
In 44 Am.Jur., Rape, § 7, page 906, the following appears:
"Resistance is necessarily relative. It is accordingly not necessarily illogical for courts to apply the requirement of most vigorous resistance to common cases, and to modify it in varying degrees and peculiar circumstances, and to refuse to apply it to exceptional cases. In all cases, the circumstances and conditions surrounding the parties to the transaction are to be considered in determining whether adequate resistance was offered by the female. It is proper to consider the age and strength of the woman, and her mental condition as bearing upon the question whether the act was against her will and consent, and upon the extent of the resistance which the law required her to make."
The prosecutrix testified that the defendant asked her if she had seen Peggy, a girl who had introduced the prosecutrix and the defendant to each other. The prosecutrix said the defendant asked her to accompany him to search for Peggy, who he believed was at the Melody Lane Bar. The defendant's testimony, however, was that the prosecutrix asked him to assist her in getting her husband's car out of a bog where it was stuck and that he agreed to assist the prosecutrix.
*250 The defense of the defendant in this case was not that usually found in such a case, that is, that he had intercourse with the prosecutrix after she had consented. His defense was a complete denial of any intimacy. According to defendant's version, he and the prosecutrix left in his truck, and the prosecutrix gave him directions. In accordance with those directions, they drove across some railroad tracks and down the road until the prosecutrix instructed him to turn into a little sandy road. The defendant turned and drove about 100 feet when the prosecutrix stated to the defendant, "I am going to fix you and Peggy now," opened the door and jumped out of the truck.
The defendant further testified that he wanted to see what had happened to the prosecutrix, that he turned his truck around and started coming out of the sandy road toward the main highway, that his truck then got stuck in the sand, and that he got out and walked up to the main road in search for the prosecutrix and did not find her. He then went back to jack up his truck, and while in the process of jacking up his truck, two police officers appeared and brought him back to a patrol car where he was identified by the prosecutrix.
The prosecutrix' explanation of what happened after she and defendant left The Cork Bar in his truck was that she and defendant drove towards Dixie Highway, that after crossing a railroad track, she asked where they were going, that defendant said he thought they might find Peggy at a certain dance hall, and that prosecutrix accepted the explanation. Suddenly, defendant turned onto a sand road, and when prosecutrix asked why he had done so, he said, "I am going to rape you," to which she replied, "Oh, no, you are not."
The prosecutrix further stated that after the defendant threatened to rape her, he came around to her side of the truck, that he had her on her back, but that he did not succeed the first time. Subsequently he did. The prosecutrix explained that she got out of the truck and tried to get away but that the defendant caught her after she had gotten a few steps from the truck and threw her back on the seat of the truck. She said she pleaded with the defendant not to rape her and testified that she put her hand on the horn of the truck and blew the horn, that she screamed and begged the defendant not to rape her, that she showed him a cross she was wearing and that she explained to him that she was old enough to be his mother. She said she finally escaped from the defendant and hurried to the main highway. She further testified she received injuries to her left wrist, right forearm, left upper arm, and bruises on her back and between her legs. After she did get away, she went back to the highway and stopped a car that was occupied by two persons. They took the prosecutrix to a service station where the police officers were contacted, and they subsequently appeared as witnesses in the case.
Dr. Brantley testified that in his opinion the prosecutrix had had sexual intercourse that night. A nurse testified that she examined the prosecutrix that same night, that she was very emotionally upset and complained of pains and marks on her body and chest. Another doctor testified that the prosecutrix had various black and blue spots on her body, and that they were so distributed as to indicate that they were made by fingers.
There was testimony in the record by an F.B.I. agent that he had, at the request of the Police Department, made chemical examinations of the step-ins worn by the prosecutrix on the night in question and had found thereon semen deposits.
There was further testimony that the prosecuting witness had previously had an operation for cancer, which had resulted in a complete hysterectomy.
This case was peculiarly one that was within the province of the jury. The evidence was very conflicting. The prosecuting witness herself was not a model witness. *251 The fact that an elderly lady of some 67 years of age was frequenting the bar rooms and had left in a truck with a man who was more or less a stranger would naturally place the State under a heavy burden in trying to obtain a conviction in this case. Regardless of the prosecuting witness' actions, the jury did convict. Even had the prosecuting witness been a noted prostitute, this fact would have been no defense against rape, had the facts demonstrated carnal knowledge against consent. We are of the opinion that under the facts of this case there was sufficient evidence to sustain the jury's verdict. The evidence in this case was as strong as the evidence in the case of Green v. State, supra, 184 So. 504.
Points II and II(a) we shall discuss together. The evidence in this case was mostly direct, not circumstantial evidence. A study of the record shows that the State relied upon direct evidence for conviction. Where the prosecution relies upon circumstantial evidence, a proper charge on circumstantial evidence should be given by the Court. In the case of Leavine v. State, 1933, 109 Fla. 447, 147 So. 897, 905, the Supreme Court said:
"The rule, however, is generally accepted that because of the nature of circumstantial evidence in which an inference affecting guilt is drawn from collateral facts which have a natural or generally recognized relation to the inference to be drawn, the court should instruct upon the law relating to such evidence where the prosecution relies solely or substantially upon such evidence. See 16 C.J. 1008. To be available to the accused, however, he should specially request such an instruction. See 16 C.J. 1058. The above rule is supported by many authorities. State v. Smith, Mo.Sup., 190 S.W. 288; Miller v. State, 88 Tex.Cr.R. 69, 225 S.W. 379, 12 A.L.R. 597; Fuller v. State, 98 Tex. Cr.R. 426, 265 S.W. 1033."
We do not deem it necessary to pass upon the legal sufficiency of the instruction quoted in our Point II(a), since we are of the opinion that the refusal of the court to so charge after the evidence in this case, which shows that the bulk was conflicting, direct evidence, was not prejudicial.
Moreover, the appellant is precluded from assigning the refusal of the court to give the requested charge, as the record does not show any objection to such refusal interposed in the trial court prior to the time that the jury retired to consider its verdict. The objection first appears in the appellant's motion for a new trial. Section 918.10(4), Florida Statutes, F.S.A., provides:
"No party may assign as error or grounds of appeal, the giving or the failure to give an instruction, unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects, and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."
The Supreme Court of Florida, in Simmons v. State, 1942, 151 Fla. 778, 10 So.2d 436, held that where no objection was announced by the defendant to a challenged instruction until presentation of a motion for a new trial, the giving of such challenged instruction could not be assigned as error on appeal.
As indicated above, appellee's Point III read as follows:
"Whether or not an abuse of judicial discretion occurred in violation of Florida Statutes, Chapter 919.05, when the trial court declined the jury's request to hear `some testimony again' after it had retired to consider its verdict?"
The appellant, in his point 9, states the above questions as follows:

*252 "The refusal of the Court to permit the Jury upon their request to hear the testimony of certain witnesses read back to them, after they had been given the case, and after having deliberated for an hour and forty-five minutes, was error."
Appellant's version of the above point is not based on the facts as they appear in this record. As a matter of fact, the appellant, on page 16 of his brief, states the following:
"After the Jury retired and deliberated for an hour and forty-five minutes, they asked to come back to the court room, and the following proceedings were had:
"`The Court: Gentlemen, have you arrived at a verdict?
"`A Juror: No, sir, we have not, but we do have some conflicting opinion and we are wondering if it would be possible to hear some testimony again.
"`The Court: No, sir.
"`The Juror: That is not possible?
"`The Court: The taking of testimony has been closed and you will have to reason among yourselves and work that out among yourselves. That is wholly within your province to try out the facts. We cannot help you any more so far as bringing testimony back in or anything like that. Can the Court be of assistance to you in the charges?
"`The Juror: No, I think the charges are clear, Your Honor.'"
Trial judges often have requests made by juries for additional testimony or to hear some witness again or to visit the scene of the crime. In Brown v. State, 1943, 152 Fla. 508, 12 So.2d 292, 293, the Supreme Court said:
"The last point presented for determination is the correctness of the ruling of the trial court in declining a request of the jury `for some information in regard to some testimony of one witness * * *' It is not clear from the record whether the jury wished to hear additional testimony from the witness or simply to have read the record of that testimony. If the former construction is applied the judge was obviously correct because of the provision of Section 222, Criminal Procedure Act, Section 919.07, Florida Statutes, 1941, prohibiting recall of jurors to hear additional evidence after they have retired for the consideration of their verdict. If the latter interpretation is applied the procedure was justified by Section 220, Criminal Procedure Act, Section 919.05, Florida Statutes, 1941, especially providing for the reading to the jury, `upon their request,' of any testimony theretofore taken in the trial although `the jurors have retired to consider their verdict.' Even following this interpretation, however, it has not been made to appear that any injury was suffered by the defendant by reason of the court's refusal."
Finding no reversible error in the record, the case is affirmed.
Affirmed.
SHANNON, J., and MORROW, R.O., Associate Judge, concur.