490 So.2d 24 (1986)
Ronald WOODS, Appellant,
v.
STATE of Florida, Appellee.
No. 64509.
Supreme Court of Florida.
April 24, 1986.
Rehearing Denied July 18, 1986.
*25 Michael E. Allen, Public Defender and David A. Davis, Asst. Public Defender, Second Judicial Circuit, Tallahassee, for appellant.
Jim Smith, Atty. Gen., and Lawrence A. Kaden and John M. Koenig, Jr., Asst. Attys. Gen., Tallahassee, for appellee.
PER CURIAM.
Ronald Woods appeals his conviction of first-degree murder and sentence of death. We have jurisdiction pursuant to article V, section 3(b)(1), Florida Constitution. After reviewing this case, we affirm both the conviction and sentence.
Woods and Leonard Bean, both inmates at Union Correctional Institution, stabbed four guards, one of whom died during surgery. The state charged each of them with one count of first-degree murder, three counts of attempted first-degree murder, and possession of contraband (the knives used in the stabbings). In a joint trial the jury convicted both Woods and Bean of first-degree murder and possession of contraband. It also convicted Woods of all three counts of attempted murder,[1] but convicted Bean of only one of those attempts. After the sentencing proceeding, the jury recommended that Woods be sentenced to death and that Bean receive a sentence of life imprisonment. The trial court agreed with the recommendations and sentenced the defendants accordingly.
During voir dire, one of Woods' attorneys objected to the state's use of its peremptory challenges to remove black prospective jurors. The court overruled the objection, and jury selection and trial continued. A full year after the completion of the trial, but before we heard this appeal, this Court filed its opinion in State v. Neil, 457 So.2d 481 (Fla. 1984). In Neil we held that a party may be required to state the basis for exercising peremptory challenges. Woods filed a motion asking this Court to relinquish jurisdiction in order to reconstruct the record regarding the Neil issue.[2] The reconstructed record, however, *26 demonstrates no likelihood of abuse of its peremptory challenges by the state such as would require the trial court to inquire into the state's motive behind excusing these persons.
At trial Woods' attorney made a single objection to the state's exercise of its peremptory challenges. This occurred after the state had used ten peremptories. Defense counsel contended that six of those had been exercised against blacks and that the state had "removed every black that was on this jury." The reconstructed record shows this claim to be not exactly correct because at that time Bean's attorney had excused one of the first six blacks.
Voir dire in this case extended through nine black prospective jurors. On the reconstructed record the parties agreed that the state exercised peremptory challenges against six of the nine, Bean and Woods excused one each, and the ninth served as an alternate juror. In Neil we stated that "`exclusion of a significant number of black potential jurors ... will be insufficient, in and of itself, to warrant reversal of a trial court's determination not to make inquiry.'" 457 So.2d at 486, quoting People v. Thompson, 79 A.D.2d 87, 111, 435 N.Y.S.2d 739, 755 (1981). This is so because the reasons for excusing such persons may have been readily apparent to the judge and others in attendance at the voir dire. Id. Such is the case here.
The transcript of the voir dire shows that one of the people the parties thought had been peremptorily excused had actually been excused for cause.[3] Of the remaining five, two clearly expressed their general reluctance to participating in deciding this case.[4] The three other peremptories exercised against blacks by the state simply do not rise to the level needed under Neil. Woods has failed to demonstrate a substantial likelihood that the state exercised its peremptory challenges solely on the basis of race.[5]
The public defender initially represented both Woods and Bean after their arrest in June 1983. In July the public defender's office withdrew from representing Woods, and the trial court appointed a new lawyer for him. The trial started nine weeks later. After granting one continuance, the trial court refused to continue the case again, and Woods now claims that this constituted unnecessary speed which denied him a fair trial because his defense could not be prepared adequately.
Granting or not granting a continuance is within a trial court's discretion. Lusk v. State, 446 So.2d 1038 (Fla.), cert. denied, ___ U.S. ___, 105 S.Ct. 229, 83 L.Ed.2d 158 (1984); Williams v. State, 438 So.2d 781 (Fla. 1983), cert. denied, 465 U.S. 1109, 104 S.Ct. 1617, 80 L.Ed.2d 146 (1984); Jent v. State, 408 So.2d 1024 (Fla. 1981), cert. denied, 457 U.S. 1111, 102 S.Ct. 2916, 73 L.Ed.2d 1322 (1982). A trial court's ruling on a continuance will not be disturbed unless an abuse of discretion is shown. Jent. Woods has demonstrated no such abuse here. The trial court granted Woods' first motion for a continuance, but refused the next one. Woods' counsel argued that he needed more time to investigate the possibility of an inmate group's having coerced Woods into attacking the victims. A prison investigation, however, had never connected Woods to that group, and counsel's contentions amount to nothing more than conjecture and speculation. This case is a far cry from Valle v. State, 394 So.2d 1004 (Fla. 1981), where counsel had only twenty-four days to prepare for trial, and our review of the record reveals no abuse of discretion here.
A number of department of corrections employees attended this trial dressed *27 in their uniforms. Just prior to closing argument Woods' counsel asked the trial court to clear the courtroom of the uniformed spectators. The court refused that request, and Woods now argues that the presence of these uniformed employees intimidated the jury, thereby denying him a fair trial.
In making this argument Woods relies on State v. Gens, 107 S.C. 448, 93 S.E. 139 (1917), United States v. Rios Ruiz, 579 F.2d 670 (1st Cir.1978), and State v. Franklin, 327 S.E.2d 449 (W. Va. 1985). In Gens the South Carolina Supreme Court reversed Gens' conviction of transporting liquor because, during trial, several women had held up large posters condemning liquor before the jury. In Rios Ruiz the first circuit upheld the trial court's asking three uniformed policemen to leave the courtroom during the trial of a policeman accused of beating two persons while arresting them.[6] In Franklin West Virginia's Supreme Court reversed Franklin's conviction for driving under the influence of alcohol resulting in death because the local sheriff, president of the local Mothers Against Drunk Driving (MADD) chapter, and ten to thirty spectators wore large, bright yellow MADD buttons while attending the trial.
Courts have the inherent power to preserve order in the courtroom, to protect the rights of the parties, and to further the interests of justice. Miami Herald Publishing Co. v. Lewis, 426 So.2d 1 (Fla. 1982). Excluding spectators, in effect closing a trial, is largely a matter of discretion with the court, see Bundy v. State, 455 So.2d 330 (Fla. 1984), but the primary aim in such an exclusion is to preserve the defendant's rights. Bundy; Green v. State, 135 Fla. 17, 184 So. 504 (1938). Here, although the question is close, we find no likelihood of prejudice or intimidation sufficient to demonstrate an abuse of discretion in the trial court's failure to exclude the uniformed spectators.
Union is a small county. Given the number of prisons in that locality, uniformed corrections employees are a commonplace sight. Uniformed spectators caused no disruption, although they had apparently been present throughout this trial. On voir dire the prospective jurors indicated that they would follow the evidence and the law in their deliberations and would not be swayed by outside influences. In some instances the mere presence of certain persons may be intimidating. Franklin; Rios Ruiz. Such is not always the case, however. Compare State v. Richey, 298 S.E.2d 879 (W. Va. 1982) (high school students need not be excluded from watching trial of man accused of raping one of their classmates). Here, we can find no indication that the jury failed to perform its duty properly. We find that the trial court did not err in failing to exclude the complained-about spectators.
As stated earlier, the jury recommended that Woods be sentenced to death and that his co-defendant Bean be sentenced to life imprisonment. Woods now claims that the trial court erred in following the jury's recommendation because he and Bean had similar characteristics and were equally culpable. The record, however, belies Woods' claim of equal culpability. Witnesses testified that Woods, rather than Bean, was the homicide victim's prime attacker. Woods, not Bean, told the victim he would die while the victim begged for his life. Woods, not Bean, held the office door shut to prevent other corrections officers from rescuing the victim. Finally. Woods stabbed a total of four guards, while Bean attacked only two. The record clearly supports the jury and trial court's disparate treatment of these defendants. See Demps v. State, 395 So.2d 501 (Fla.), cert. denied, 454 U.S. 933, 102 S.Ct. 430, 70 L.Ed.2d 239 (1981).
As his final point on appeal, Woods argues that the trial court failed to consider unrebutted nonstatutory mitigating evidence *28 regarding Woods' low intelligence and his past life.[7] That the trial court did not articulate how he considered and analyzed the mitigating evidence is not necessarily an indication that he failed to do so. We do not require that trial courts use "magic words" when writing sentencing findings, and we recognize that some findings are inartfully drafted. Davis v. State, 461 So.2d 67 (Fla. 1984), cert. denied, ___ U.S. ___, 105 S.Ct. 3540, 87 L.Ed.2d 663 (1985). The trial court did not restrict the presentation of mitigating evidence, and we find no indication in the findings of fact that the court ignored that evidence. We find no error in the trial court's failure to find more in mitigation in this case. See Stano v. State, 473 So.2d 1282 (Fla. 1985).
Our review shows Woods' convictions and sentences to be supported by the record. We therefore affirm them.
It is so ordered.
BOYD, C.J., and ADKINS, OVERTON, McDONALD and EHRLICH, JJ., concur.
SHAW, J., dissents with an opinion.
SHAW, Justice, dissenting.
I would reverse the conviction on the basis that the presence of approximately forty-five corrections officers in uniform, approximately half the public in attendance during closing argument to the jury, effectively denied appellant a fair trial. The state concedes that this Court has already recognized that Union County is a small county and that many of the citizens of that county either work for the Department of Corrections or are related to such workers. Lusk v. State, 446 So.2d 2d 1038 (Fla.), cert. denied, ___ U.S. ___, 105 S.Ct. 229, 83 L.Ed.2d 158 (1984), and Morgan v. State, 415 So.2d 6 (Fla.), cert. denied, 459 U.S. 1055, 103 S.Ct. 473, 74 L.Ed.2d 621 (1982).
Appellant does not argue that the presence of uniformed corrections officers amounts to per se reversible error. His argument is that under the unique circumstances of this case, the presence of such a large number of uniformed officers at the most emotionally charged stage of the trial amounted to an abuse of judicial discretion. I agree.
An accused is entitled to a trial before an impartial jury unaffected by outside forces and influences. The presence of forty-five uniformed corrections officers is, in my mind, no less prejudicial than the presence of forty-five friends of a murder victim appearing en masse at the trial of the accused assailant, bearing signs expressing their concerns regarding the outcome of the trial. Exhibitions of this nature have no place in a court of law because of the great possibility of jury intimidation or coercion. Having denied appellant's motion for a change of venue, the trial court assumed the heavy burden of ensuring that the fairness of the trial was not compromised by the venue and the deep public interest in the trial. I am persuaded that the trial judge abused his discretion in not requiring the removal of the uniformed corrections officers, and that in the interest of justice a new trial should be granted.[*]
I agree with the majority's analysis and disposition of the other issues raised.
NOTES
[1] Woods does not appeal his other convictions and sentences. Our review of the record, however, shows them to be amply supported by the evidence, and we therefore affirm them.
[2] We held in Neil that that case would not be applied retroactively because of the difficulty presented by incomplete records and reliance on former standards. Our reversal in Andrews v. State, 459 So.2d 1018 (Fla. 1984), should not be seen as a retreat from that stand because the record in Andrews met the Neil criteria. Woods objected to the state's conduct, and, in our discretion, we allowed reconstruction of the record because the court reporter had not recorded and transcribed the bench conferences where the sides exercised their peremptories. Even now this record is the bare minimum we would expect from one seeking review of the Neil issue on appeal, i.e., a timely objection to the systematic excusal of blacks and an identification of the number of and names of those struck.
[3] The state challenged Watkins for cause. She responded affirmatively when the trial court asked her: "You would not be a fair juror?" Defense counsel did not object to her excusal.
[4] Not wanting a reluctant juror is not evidence of discrimination.
[5] The state also used peremptory challenges against seven white prospective jurors.
[6] On appeal Rios Ruiz claimed that removing these three spectators denied him a fair and public trial.
[7] The trial court found the following aggravating circumstances under § 921.141(5), Fla. Stat. (1983): 1) committed by person under sentence of imprisonment, § 921.141(5)(a); and 2) committed to disrupt or hinder the lawful exercise of a governmental function or the enforcement of laws, § 921.141(5)(g). We find these aggravating factors amply supported by the record. The trial court found Woods' age (18 years) to be a mitigating circumstance. § 921.141(6)(g).
[*] Fla.R.App. P. 9.140(f):

Scope of Review. The court shall review all rulings and orders appearing in the record necessary to pass upon the grounds of an appeal. In the interest of justice, the court may grant any relief to which any party is entitled. In capital cases, the court shall review the evidence to determine if the interest of justice requires a new trial, whether or not insufficiency of the evidence is an issue presented for review.