570 So.2d 296 (1990)
Ebony HALL, by and through Her Parents and Natural Guardians, James HALL and Emily Hall, and James Hall and Emily Hall, Individually, Appellants,
v.
Hosain DAEE, M.D., Hosain Daee, M.D., P.A., Raul Hernandez, M.D., City of Homestead, D/B/a James Archer Smith Hospital, and the Florida Patients Compensation Fund, Appellees.
No. 88-1628.
District Court of Appeal of Florida, Third District.
April 17, 1990.
On Motion for Rehearing, Clarification and Certification November 20, 1990.
Stanley M. Rosenblatt, and Daniel K. Bandklayder, Miami, for appellants.
Stephens, Lynn, Klein & McNicholas, and Debra J. Snow, Miami, for appellees Hosain Daee, M.D., and Hosain Daee, M.D., P.A.
Kubicki, Bradley, Draper, Gallagher & McGrane, and Betsy Gallagher, Miami, for appellee City of Homestead, d/b/a James Archer Smith Hosp.
Fowler, White, Burnett, Hurley, Banick & Strickroot, and Henry Burnett, and Steven E. Stark, Miami, for appellee Raul Hernandez, M.D.
Joe N. Unger, Miami, for appellee The Florida Patients Compensation Fund.
Before SCHWARTZ, C.J., and GERSTEN and GODERICH, JJ.
PER CURIAM.
Affirmed. Woods v. State, 490 So.2d 24 (Fla.), cert denied, 479 U.S. 954, 107 S.Ct. 446, 93 L.Ed.2d 394 (1986); Moore v. Morris, 475 So.2d 666 (Fla. 1985); South Florida Beverage Corporation v. San Pedro, 499 So.2d 915 (Fla. 3d DCA 1986); Meli v. Dade County School Board, 490 So.2d 120 (Fla. 3d DCA), review denied, 500 So.2d 543 (Fla. 1986); Del Monte Banana Company v. Chacon, 466 So.2d 1167 (Fla. 3d DCA 1985); Tilley v. Broward Hospital District, 458 So.2d 817 (Fla. 4th DCA 1984); Morganstine v. Rosomoff, 407 So.2d 941 (Fla. 3d DCA 1981); § 90.403, Fla. Stat. (1989).
GERSTEN and GODERICH, JJ., concur.
*297 SCHWARTZ, Chief Judge (dissenting).
This is a malpractice case arising out of defects sustained by the minor plaintiff during childbirth.

I
I would reverse the defendants' judgment entered below for a new trial on all issues because I believe that the trial court abused its discretion in failing to hold that the defendants' peremptory excusal of five of six sitting black jurors "demonstrate[d] ... that there [was] a strong likelihood that they [were] challenged solely because of their race," so as to cross the threshold erected by State v. Neil, 457 So.2d 481, 486 (Fla. 1984), and require a neutral non-biased explanation for the challenges. Bryant v. State, 1990 WL 40364 (Fla. Case nos. 71,356, 71,357, 71,258, 71,355, opinion filed, March 29, 1990) [15 FLW S179]; Thompson v. State, 548 So.2d 198 (Fla. 1989); City of Miami v. Cornett, 463 So.2d 399 (Fla. 3d DCA 1985).

II
Quite apart from this, I also believe that the judgment entered in favor of Dr. Daee, based upon the jury finding that the statute of limitations had run as to him, should be set aside and a new trial ordered on that question alone. In my view, the trial court reversibly erred in two respects concerning this issue:
(a) The trial judge instructed the jury that the statute begins to run when a malpractice plaintiff is or should be aware either of the incident or the injury in question. In my view, this statement was clearly contrary to the law which requires knowledge of both the incident and the injury to trigger the limitations period. Elliot v. Barrow, 526 So.2d 989 (Fla. 1st DCA), review denied, 536 So.2d 244 (Fla. 1988); Florida Patient's Compensation Fund v. Sitomer, 524 So.2d 671 (Fla. 4th DCA 1988), review dismissed, 531 So.2d 1353 (Fla. 1988), quashed on other grounds sub nom. Smith v. Sitomes, 550 So.2d 461 (Fla. 1989); Schafer v. Lehrer, 476 So.2d 781 (Fla. 4th DCA 1985). See generally Jackson v. Georgopolous, 552 So.2d 215 (Fla. 2d DCA 1989) (Lehan, J., concurring specially). The court should have instead instructed the jury, as the plaintiffs requested, in accordance with the charge specifically approved in Sitomer, which was directly contrary to the one actually given.
(b) In this connection, the court should not have excluded evidence that the child's mother, believing that her child's injuries had been caused by a congenital problem in her which might recur, rather than the malpractice of the present appellees, aborted a subsequent pregnancy. This testimony was obviously persuasively significant as to whether she actually knew or should have known the actual cause of the first child's injuries and was thus directly relevant to the limitations issue. Since all relevant testimony is presumptively admissible, Fla.Evidence Code § 90.402, and I see no foundation for the claim that there was any prejudicial impact to this testimony, much less one which would overcome its probative value, compare Perper v. Edell, 44 So.2d 78 (Fla. 1949), I would find error on this ground as well.
Before SCHWARTZ, C.J., and BARKDULL, HUBBART, NESBITT, BASKIN, FERGUSON, JORGENSON, COPE, LEVY, GERSTEN and GODERICH., JJ.

OPINION ON MOTIONS FOR REHEARING, CLARIFICATION, AND 
CERTIFICATION
PER CURIAM.
Appellants, plaintiffs below, move for rehearing, clarification, and certification of this court's majority opinion affirming the judgments of the trial court in favor of the appellees, defendants below. Hall v. Daee, 570 So.2d 296 (Fla. 3d DCA 1990). We deny plaintiffs' motions for rehearing and clarification, but grant their motion for certification solely with respect to the issue concerning jury selection.
The facts relevant to this one issue are briefly stated. Plaintiffs, James and Emily Hall, the parents of Ebony Hall, brought suit against Dr. Hosain Daee, Dr. Raul Hernandez, and James Archer Smith Hospital, for malpractice for injuries their daughter allegedly sustained at birth.
During voir dire, the trial court allowed the three defendants to pool their peremptory *298 challenges. Of the thirty-five veniremembers, six were black; five of those six were reached in voir dire. Four of those five were the subjects of defendants' peremptory challenges.
Dr. Hernandez exercised a peremptory challenge on one black potential juror, James Archer Smith Hospital exercised a peremptory challenge on another black potential juror, and Dr. Daee exercised a peremptory challenge on two black potential jurors. Three of the four stricken black panel members had close ties to the medical community. One black panel member served on the jury; one served as an alternate juror. When the plaintiffs, who are black, objected to defense counsels' striking of the four black potential jurors, claiming the strikes were being exercised in a racially discriminatory manner, the trial court carefully considered plaintiffs' motion and determined that there was no need to inquire as to the defendants' reasons for the strikes.
The plaintiffs argue that the final judgment must be reversed and a new trial ordered, where the trial court failed to conduct an inquiry as to why the defendants struck four out of five black veniremembers. The plaintiffs claim that this panel's majority decision does not conform to State v. Neil, 457 So.2d 481 (Fla. 1984), and its progeny. We do not agree.
We conclude the trial court's decision not to conduct an inquiry into the basis for defendants' exercise of their peremptory challenges did not constitute an abuse of discretion. Pursuant to Neil, a trial court inquiry is required only if the challenging party can show a strong likelihood, and the trial judge then finds a substantial likelihood, that the peremptory challenges are being exercised in a racially discriminatory manner. State v. Neil, 457 So.2d at 486; accord Foster v. State, 557 So.2d 634 (Fla.3d DCA 1990).
In this case, in denying the plaintiffs' motion objecting to the defense's striking of four black prospective jurors, the court specifically found:
(1) There was "no pattern of exclusion of blacks;"
(2) the defendants were "using their challenges individually;" and
(3) there had been "no violation of the Neal [sic] decision."
The record in this case does not demonstrate that there was a strong likelihood that the jurors were challenged solely on the basis of their race. Here, there were five black prospective jurors. Of these five, three had close ties to the medical community. Of the two black prospective jurors who did not have ties to the medical community, one was selected to serve on the jury. Since this was a medical malpractice case, the trial court, therefore, had more than sufficient basis to find that there was not a substantial likelihood that the challenges were based on race.
Further, the Florida Supreme Court, in Neil, left the decision of whether to conduct an inquiry to the sound discretion of the trial court. Neil, 457 So.2d at 487. The supreme court's ruling, that the decision rests within the trial court's sound discretion, was recently reaffirmed by the court in Reed v. State, 560 So.2d 203 (Fla.), cert. denied, ___ U.S. ___, 111 S.Ct. 230, 112 L.Ed.2d 184 (1990). In Reed, the court stated:
Within the limitations imposed by State v. Neil, the trial judge necessarily is vested with broad discretion in determining whether peremptory challenges are racially intended. State v. Slappy [522 So.2d 18 (Fla. 1988)]. Only one who is present at the trial can discern the nuances of the spoken word and the demeanor of those involved.
Reed, 560 So.2d at 206. The court went on to say:
In trying to achieve the delicate balance between eliminating racial prejudice and the right to exercise peremptory challenges, we must necessarily rely on the inherent fairness and color blindness of our trial judges who are on the scene and who themselves get a "feel" for what is going on in the jury selection process.
Reed, 560 So.2d at 206.
Reed is similar to the present case. In Reed, the prosecutor used eight of his ten peremptory strikes to excuse blacks from the jury. The trial court determined that *299 there had not been a prima facie showing of exclusion of jurors on a racial basis. Reed v. State, 560 So.2d at 206. The trial court, however, permitted the prosecutor to give a voluntary explanation of the state's reasons for the challenges. The Florida Supreme Court ruled that a reversal of the jury verdict was not required. In so ruling the court relied in part on the broad discretion of the trial court and further stated:
Given the circumstances that both the defendant and the victim were white and that two black jurors were already seated, we cannot say that the trial judge abused his discretion in concluding that the defense had failed to make a prima facie showing that there was a strong likelihood that the jurors were challenged because of their race.
Reed, 560 So.2d at 206; Parker v. State, 476 So.2d 134 (Fla. 1985) (trial court did not err in overruling defense objection to state's peremptory challenge of four black jurors, where it was clear from the record that the defendant failed to demonstrate a strong likelihood that these prospective jurors were challenged solely on the basis of their race); Gonzalez v. State, 569 So.2d 782 (Fla. 4th DCA Oct. 10, 1990) (trial court properly overruled defense objection to the state's excusing one juror, where defendant had failed to meet his burden of demonstrating a substantial likelihood the challenge was racially motivated); State v. Williams, 566 So.2d 1348 (Fla. 1st DCA 1990) (trial court did not err in allowing, over defense objection, the state to exclude three of six black jurors, where defense had not made a prima facie showing that the state was excluding jurors only because of their race); Dinkins v. State, 566 So.2d 859 (Fla. 1st DCA 1990) (trial court did not err in refusing to inquire into state's motives for challenging black juror, where trial court found the defendant did not meet his burden of showing there was a strong likelihood that the state's challenge was based on race); Verdelotti v. State, 560 So.2d 1328 (Fla. 2d DCA 1990) (trial court did not err in permitting state to peremptorily exclude, over defendant's objection, one black juror, where defendant did not carry his burden of showing that there was a strong likelihood that the juror was challenged solely because of race); Adams v. State, 559 So.2d 1293 (Fla. 3d DCA), dismissed, 564 So.2d 488 (Fla. 1990) (trial court did not err in failing to inquire into state's motives for excluding black prospective juror, where defendant failed to demonstrate there was a strong likelihood that juror was challenged solely on the basis of her race).
Woods v. State, 490 So.2d 24 (Fla.), cert. denied, 479 U.S. 954, 107 S.Ct. 446, 93 L.Ed.2d 394 (1986), is also similar to this case. In Woods, the state had exercised five of ten peremptory strikes against blacks. The Florida Supreme Court found that the record demonstrated "no likelihood of abuse of its peremptory challenges by the state such as would require the trial court to inquire into the state's motive behind excusing these persons." Woods v. State, 490 So.2d at 25-26.
The Woods court stated that of the five, "two clearly expressed their general reluctance to participating in deciding this case. The three other peremptories exercised against blacks by the state simply do not rise to the level needed under Neil." Woods, 490 So.2d at 26; see also, Casimiro v. State, 557 So.2d 223, 224 (Fla. 3d DCA 1990) ("the challenge of the four black jurors, by itself, was insufficient to require an inquiry where the record clearly established why the challenged persons were unacceptable state jurors," citing Woods).
The plaintiffs rely heavily on Bryant v. State, 565 So.2d 1298 (Fla. 1990). In Bryant, the state exercised five of its first seven peremptory challenges to excuse black potential jurors and the trial court summarily denied the defense counsels' requests for a Neil inquiry. The Florida Supreme Court ruled the trial court erred in failing to conduct a Neil inquiry. Bryant v. State, 565 So.2d at 1299-1300.
Bryant is factually distinguishable. Here, the defendants exercised only one of their first five peremptory challenges against a black prospective juror, and the trial court did give careful consideration to plaintiffs' objection.
Bryant came out after Reed v. State, 560 So.2d at 203. We believe Reed is more similar than Bryant to the facts in this *300 case. To the extent, however, that the facts in Bryant are deemed applicable, we certify the following question to the Florida Supreme Court as one of great public importance:
WHETHER, AS A MATTER OF LAW, A NEIL INQUIRY MUST BE CONDUCTED BY THE TRIAL COURT, EVEN THOUGH THE TRIAL COURT FOUND THERE HAD BEEN NO CHALLENGE OF JURORS ON A RACIALLY DISCRIMINATORY BASIS, WHERE THE DEFENDANTS EXERCISED PEREMPTORY CHALLENGES ON FOUR OUT OF FIVE BLACK PROSPECTIVE JURORS?
Accordingly, plaintiffs' motions for rehearing and clarification are denied, and plaintiffs' motion for certification is granted in part.
GERSTEN and GODERICH, JJ., concur.
SCHWARTZ, Chief Judge (dissenting).
I continue to believe that the exercise of defense peremptory challenges to remove four out of five black potential jurors demonstrated, on the face of it, a "strong likelihood" that the challenges were motivated by an impermissible bias against African-Americans  one which was especially understandable, although certainly not excusable, in a case like this in which black plaintiffs were suing non-black professional defendants. While I confess myself unable to reconcile Bryant v. State, 565 So.2d 1298 (Fla. 1990) and Reed v. State, 560 So.2d 203 (Fla. 1990), cert. denied, ___ U.S. ___, 111 S.Ct. 230, ___ L.Ed.2d ___ (1990), upon which the majority relies and which seems quite similar to Bryant but is not cited in that decision, I believe that because of the sensitivity of the issue and the announced policy that "any doubts as to the existence of a `likelihood' of impermissible bias must be resolved in the objecting party's favor," Thompson v. State, 548 So.2d 198, 200 (Fla. 1989) (citing State v. Slappy, 522 So.2d 18, 21-22 (Fla. 1988), cert. denied, 487 U.S. 1219, 108 S.Ct. 2873, 101 L.Ed.2d 909 (1988)), Bryant should control. Accordingly, I would hold that the trial court reversibly erred by declining to put the defendants to the Slappy test of presenting an acceptable, race-neutral explanation for their challenges. In my view, therefore, the judgment below must be reversed.[1]

ON MOTION FOR REHEARING EN BANC
PER CURIAM.
Motion for rehearing en banc denied.
BARKDULL, HUBBART, NESBITT, BASKIN, GERSTEN and GODERICH, JJ., concur.
SCHWARTZ, C.J., and FERGUSON, JORGENSON, COPE and LEVY, JJ., dissent.
NOTES
[1] Because of the continuing importance of the question, I agree to the certification of the case to the Supreme Court. (As an aside, I suggest that the high court might well have jurisdiction to review the decision under Art. V, § 3(b)(3), Fla. Const., no matter whether the majority or the dissent had prevailed, as in express and direct conflict with either Bryant or Reed, respectively.)