784 So.2d 380 (2000)
Robert PATTON, Appellant,
v.
STATE of Florida, Appellee.
No. SC89669.
Supreme Court of Florida.
September 28, 2000.
Rehearing Denied December 22, 2000.
*384 Todd G. Scher, Chief Assistant CCRC, Office of the Capital Collateral Regional Counsel-South, Fort Lauderdale, Florida, for Appellant.
Robert A. Butterworth, Attorney General, and Fariba N. Komeily and Lisa Rodriguez, Assistant Attorneys General, Miami, Florida, for Appellee.
PER CURIAM.
Robert Patton appeals an order entered by the trial court summarily denying his motion for postconviction relief filed pursuant to Florida Rule of Criminal Procedure 3.850. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const. For the reasons stated below we remand this case to the trial court for an evidentiary hearing on the claim that counsel was ineffective for failing to raise intoxication or insanity as a defense to first-degree premeditated murder, despite the substantial evidence of the defendant's long-term use of drugs and history of mental illness. In all other respects we affirm.
The pertinent facts are taken from our opinion on direct appeal:
[O]n September 2, 1981, the victim, a Miami police officer, attempted to stop appellant for traveling the wrong way on a one-way street. Appellant abandoned his car, which was later determined to have been stolen, and fled the scene on foot. He ran down an alley with the officer in pursuit. Witnesses heard gunshots and one witness testified that appellant had hidden in the alley and waited for the officer to approach before shooting him. The officer was found dead with two bullet wounds. One bullet had penetrated his heart, killing him instantly, and another had entered the officer's foot in a manner indicating that the officer had been shot after he was dead and lying prostrate.

*385 Immediately after the shooting, appellant stole a car at gunpoint and fled the area. He was arrested later that day and charged with first-degree murder, armed robbery, grand theft, and violation of probation. Two days later, after obtaining a search warrant, the police recovered the murder weapon from beneath a heating grate in appellant's grandmother's home.
Patten v. State, 467 So.2d 975-76 (Fla. 1985).[1]
Robert Patton (Patton) was charged with first-degree murder, armed robbery, and grand theft of a motor vehicle. He was found guilty as charged. During the penalty phase, the jury sent a note to the judge indicating that it was deadlocked by a six-to-six vote. The trial judge gave the jury an Allen[2] charge, instructing the jury to continue deliberations. The jury returned with a seven-to-five vote recommending Patton be sentenced to death. The judge sentenced him to death for first-degree murder, 110 years for armed robbery, and 5 years for grand theft.
Patton appealed his convictions and sentences. This Court affirmed all the convictions and the armed robbery and grand theft sentences. See Patten v. State, 467 So.2d 975 (Fla.1985). However, the death sentence was vacated and the case was remanded for a new sentencing proceeding before a different jury because the jury was given an improper Allen charge. See id. At resentencing, the jury recommended death by an eleven-to-one vote, and the judge imposed a death sentence. On appeal, the death sentence was affirmed. See Patten v. State, 598 So.2d 60 (Fla.1992).
Patton filed a postconviction motion pursuant to Florida Rule of Criminal Procedure 3.850 on June 7, 1994. He filed a second amended motion for postconviction relief on July 22, 1995. The State filed a response to the second amended motion and supplied the trial court with six boxes of records on July 28, 1995. At a telephone hearing held on September 21, 1995, the trial judge stated she was summarily denying the motion for the reasons advanced in the State's response. The trial judge asked the State to prepare an order to that effect. The State prepared two proposed orders, each detailing the arguments made in the State's response as the reasons for denying the motion for postconviction relief. One proposed order granted the State's motion to compel production of the defense attorney's files, and the other proposed order denied it. Both proposed orders were presented to Patton for objections. He objected to both proposed orders, arguing they went beyond the trial judge's directions. Patton wanted the proposed orders to merely state that the motion for postconviction relief was denied for all the reasons argued in the State's response without stating the actual arguments. He further objected to the proposed order granting the motion to compel production of documents, arguing the motion to compel should be denied. Both proposed orders and Patton's objections were forwarded to the trial judge. The judge signed the proposed order which denied Patton's motion for postconviction relief and denied the motion to compel. A copy of the signed order was sent to the State, and the State sent a copy to defense counsel.
*386 In this appeal, Patton raises twenty issues.[3] The nine issues which were or should have been raised on direct appeal and are therefore procedurally barred will not be addressed.[4]See Eutzy v. State, 536 So.2d 1014 (Fla.1988); Woods v. State, 490 So.2d 24 (Fla.1986). While we find only one issue warrants an evidentiary hearing, we will briefly comment on the other issues.

Need for an Evidentiary Hearing
Patton argues four reasons in support of his claim that the trial court erred in summarily denying his postconviction motion: (1) the allegations of ineffective assistance of counsel were legally sufficient and not conclusively rebutted by the record; (2) the court considered evidence from the file that was not in the record to summarily deny the motion; (3) it was improper for the judge to delegate authority to the State to draft the order denying the motion for postconviction relief; and (4) it was improper for the judge to fail to attach specific portions of the record to the order denying relief.
A defendant is entitled to an evidentiary hearing on a motion for postconviction relief unless (1) the motion, files, and records in the case conclusively show that the prisoner is entitled to no relief; or (2) the motion or particular claims are legally insufficient. See Maharaj v. State, 684 So.2d 726 (Fla.1996); Anderson v. State, 627 So.2d 1170 (Fla.1993); Holland v. State, 503 So.2d 1250 (Fla.1987). The defendant in a postconviction proceeding bears the burden, however, of establishing a prima facie case based upon a legally valid claim. Mere conclusory allegations are not sufficient. See Kennedy v. State, 547 So.2d 912 (Fla.1989).
Because the record does not conclusively refute some of Patton's allegations of ineffective assistance of counsel, *387 the court should have held an evidentiary hearing. Specifically, the court should have held a hearing to determine if counsel was ineffective in failing to investigate and present evidence that Patton was intoxicated or insane at the time of the shooting. Instead, the court summarily denied this claim stating a strategy must be presumed. If this were the standard, a strategy could be presumed in every case and an evidentiary hearing would never be required on claims of ineffective assistance of counsel. To the contrary, it was necessary for the court to conduct an evidentiary hearing to determine whether counsel was acting competently when she chose not to present an intoxication or insanity defense to a charge of first-degree premeditated murder, where she had conceded that the defendant shot the victim. These defenses have the potential to affect the outcome of the trial since voluntary intoxication or insanity can negate the specific intent needed for first-degree murder. See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
With regard to the intoxication defense, counsel had information that the defendant was a heavy drug user and had a substantial history of drug and alcohol abuse dating back to when he was seven years old. Counsel knew of but did not present evidence that Patton had been doing speedballs (a mixture of cocaine and heroin) only seven hours prior to the shooting, that the stolen car Patton had driven prior to the murder had drug paraphernalia in it, or that Patton had fresh track marks on his arm at the time he was arrested. Because this evidence was available but not presented to the jury, the issue of intoxication needs to be explored in the adversarial setting of an evidentiary hearing.
With regard to the insanity defense, there was also ample evidence available which could have suggested to defense counsel that Patton was legally insane at the time he committed this murder, including the fact that Patton had previously been adjudicated insane. The State argues that counsel was unable to find an expert who would testify that Patton was legally insane, and therefore she was not ineffective for failing to present this defense. This argument is rebutted by the record. Dr. Toomer testified at resentencing that Patton was legally insane at the time he shot the police officer. In addition there are records available that document Patton's history of mental illness. A proven claim of insanity at the time of the offense would negate the specific intent needed for a first-degree murder conviction. At the very least this claim should be tested at an evidentiary hearing.
Moreover, one of the bases for the State's argument that counsel could not find an expert to testify that Patton was legally insane was the fact that four court-appointed experts testified Patton was competent to stand trial. This argument is flawed for two reasons. First, whether a defendant is competent to stand trial is not necessarily relevant on the question of whether the defendant was insane at the time of the killing. Competency to stand trial and insanity at the time of the offense involve the defendant's mental state at separate and distinct points in time. Second, the competency experts may not have been given the type of background information that would be necessary to evaluate Patton's true mental status at the time of the murder. Patton had a substantial history of mental health problems beginning in his early childhood. Only two of the court-appointed experts who testified Patton was competent to stand trial reviewed any of Patton's hospital records from an early commitment. One of those experts was the most hesitant to find Patton competent to stand trial. He further stated he *388 would need more information to make an informed decision. This claim warrants an evidentiary hearing.
Patton's other claims of entitlement to an evidentiary hearing are without merit. His argument that the court erred in considering the court files in addition to the record is erroneous and contrary to the plain language of rule 3.850. Rule 3.850 states that the court should consider the "records" and "files" in the case. This language must be given its common meaning. No evidentiary hearing is needed on this claim.
We also disagree with Patton's allegations that the court erred by failing to properly attach specific portions of the record to the order and by allowing the State to draft the order. The order gives very specific reasons as to why each claim was denied. The court does not have to attach specific portions of the record to the order summarily denying postconviction relief where the reasons for denial are clearly spelled out in the order. See Demps v. Dugger, 714 So.2d 365 (Fla.1998); Mills v. State, 684 So.2d 801 (Fla.1996); Anderson v. State, 627 So.2d 1170, 1171 (Fla.1993).
Patton also objects to the fact that the State drafted the order and to the wording of the order. The record shows the court reviewed six boxes of records and files, the defendant's motion, and the State's response before concluding the State's responsive arguments were correct. At a telephone hearing with both parties, the court denied the motion for the reasons contained in the State's response. This statement amounted to the trial court's oral findings. The court then asked the State to reduce the findings to writing by drafting an order denying the motion for the reasons contained in the State's response. Patton claims the order should have been one sentence stating the court denied the motion based upon the State's arguments contained in its response, rather than a well-drafted order specifically detailing the portions of the record that proved the claims were legally insufficient or conclusively rebutted. To the contrary, such a conclusory order would have been insufficient.
Patton's reliance on Smothers v. State, 555 So.2d 452 (Fla. 5th DCA 1990), for the proposition that the court cannot rely on portions of the record supplied by the state attorney is not well taken because the record in that case was not given to the trial court for review at the time the response was filed; rather, the record was offered to the appellate court. Here, the record was provided to the trial court and the record reflects the court carefully reviewed the boxes of documents. The court chose to adopt the State's arguments as an accurate and well-documented reflection of the facts and law pertaining to the issues. See Anderson v. Bessemer City, 470 U.S. 564, 572, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)(stating "even when the trial court adopts proposed findings verbatim, the findings are those of the court and may be reversed only if clearly erroneous").
We also do not find merit in Patton's argument that this issue should be guided by Patterson v. State, 513 So.2d 1257 (Fla.1987), and its progeny. In Patterson, we held the State should not draft the trial court's sentencing order. This statement was based on the fact that a sentencing order is a statutorily required personal evaluation by the trial judge of aggravating and mitigating factors. The evaluation done in the sentencing order is the basis for a sentence of life or death. The sentencing order must be sufficiently detailed to allow this Court to perform its proportionality review, the review which may ultimately determine whether a person lives or dies. On the other hand, a *389 motion for postconviction relief is brought after the judgment and sentence have been affirmed and are presumed correct.[5] The order on postconviction is not a sentencing order; it is a recitation of the facts, law, and reasons for the granting or denial of requested relief. Accordingly, we find this claim is also without merit.

Dismissal for Lack of Verification
Next, Patton claims the court erred in dismissing his motion due to lack of proper verification. Patton is correct that the proper remedy for failure to file a timely oath is dismissal without prejudice. See Groover v. State, 703 So.2d 1035 (Fla. 1997); Anderson v. State, 627 So.2d 1170 (Fla.1993); Jewson v. State, 688 So.2d 968 (Fla. 1st DCA 1997). However, despite the wording used by the trial court, this claim does not warrant an evidentiary hearing because the court considered each claim on its merits. There was no dismissal on this basis.

Public Records
Patton argues the trial court erred by denying his public records request and his request for the police booking tape. These claims are both without merit. A review of the sealed records reveals the alleged public records are nothing more than the prosecutor's personal notes used during the trial. See Ragsdale v. State, 720 So.2d 203 (Fla. 1998); Johnson v. Butterworth, 713 So.2d 985 (Fla.1998). All of the notes are handwritten details of specific questions to ask during voir dire, notes on potential jurors, a time-line of events, or specific detailed questions the prosecutor planned to ask witnesses. This is clearly work-product and not discoverable as public records. Furthermore, Patton's claim that the court could not have conducted a proper in camera hearing without comparing the notes to the final drafts of documents is completely without merit as none of the notes are related to memoranda, briefs, or other pleadings.
Patton also alleges the case should be remanded with instructions that the court order the Miami Police Department to conduct a search for the missing booking videotape. Such a search would be futile because the court previously ordered the police department to produce the video or show cause why it could not be produced. The police department responded by informing the judge that all the tapes from that time period had been destroyed. This claim also is without merit.

Ineffective Assistance of Counsel at Trial
In his fourth issue, Patton argues counsel was ineffective during the guilt phase of his trial for several reasons, many of which were raised in the first issue. We find all of the allegations of ineffective assistance of counsel to be without merit with the exceptions of counsel's failure to raise voluntary intoxication and insanity defenses.
Patton alleges counsel was ineffective for failing to move for a change of venue. The court properly summarily denied this claim because Patton failed to argue sufficient facts demonstrating he suffered prejudice due to counsel's failure to request a change of venue. Had counsel made the request, it appears unlikely the court would have granted it. See Rolling v. State, 695 So.2d 278, 284-88 (Fla. 1997) (no requirement that venue be changed in a high profile case when the ability to seat an impartial jury was demonstrated *390 by individual voir dire). Every first-degree murder case naturally involves some publicity. Here, there were no allegations of extraordinary publicity; therefore, this claim was legally insufficient. Moreover, any potential prejudice was cured when the court conducted an individual voir dire which revealed a few jurors had heard something about the case through the media but that none of them remembered many details. All jurors believed they could rely exclusively on the evidence presented at trial to come to a fair decision. Thus, this claim was properly summarily denied.
Patton also argues counsel was ineffective for failing to investigate and present voluntary intoxication and insanity defenses. There is some doubt as to counsel's possible strategy for not presenting these defenses as discussed above; therefore, this claim is remanded for an evidentiary hearing. See Remeta v. Dugger, 622 So.2d 452, 455 (Fla.1993) (approving, after an evidentiary hearing, counsel's tactical decision to forego a voluntary intoxication defense which was inconsistent with defendant's theory of the case that the accomplice was the main perpetrator and triggerman in the murder). In a related claim, Patton argues counsel was ineffective for failing to question the jury about mental illness during voir dire. This claim also depends upon whether counsel was motivated not to ask such questions for strategic purposes and is therefore intertwined with the intoxication and insanity defenses. Accordingly, this claim should be explored during the evidentiary hearing.
Patton next argues counsel failed to ask the jury questions about drug addiction during voir dire. This claim is conclusively rebutted by the fact that counsel submitted written questions to the jury addressing this issue.[6]
Patton claims counsel was ineffective for failing to be an advocate. This claim is without merit because the facts counsel conceded were supported by overwhelming evidence. If counsel had denied these facts, there is no reasonable possibility the jury would have rendered a different verdict. See, e.g., McNeal v. Wainwright, 722 F.2d 674 (11th Cir.1984); McNeal v. State, 409 So.2d 528 (Fla. 5th DCA 1982).
Patton alleges the court rendered counsel ineffective[7] by allowing the media to be in the courtroom during the trial. This claim is procedurally barred because it was raised and rejected on direct appeal. See Patten, 467 So.2d at 979.
Patton also claims the court rendered counsel ineffective by failing to appoint co-counsel when it was requested. This claim is conclusively rebutted by the record. The court allowed counsel to consult with any other partner or associate in her firm and waived any billing limits. Moreover, Patton was represented by two attorneys throughout his trial.
Patton further claims the court rendered counsel ineffective by holding an ex parte proceeding. This claim is procedurally barred because it should have been raised on direct appeal. This claim is also without merit because it is conclusively rebutted by the fact that the judge had *391 previously ruled on the subject matter of the alleged ex parte proceedings (the State was to receive a copy of a psychological report) and was merely carrying out an administrative function. See Rose v. State, 601 So.2d 1181, 1183 (Fla.1992) (ex parte proceedings with respect to administrative matters are not prohibited); Nassetta v. Kaplan, 557 So.2d 919, 921 (Fla. 4th DCA 1990) (allegations regarding ex parte proceedings must evidence prejudice on the part of the judge).
Lastly, Patton alleges counsel was ineffective during the guilt phase of his trial for failing to cross-examine witnesses. This claim is also without merit. Counsel admitted Patton committed the homicide because of the overwhelming evidence of his guilt. Therefore, it was not necessary for counsel to cross-examine many of the witnesses who testified with regard to the fact that Patton shot the victim. Patton has not alleged that any of the witnesses counsel failed to cross-examine could have provided any insight into his mental state at the time of the shooting.[8]See, e.g., Engle v. Dugger, 576 So.2d 696, 700 (Fla. 1991); Magill v. State, 457 So.2d 1367, 1369 (Fla.1984). Accordingly, this claim is without merit.

Ineffective Assistance of Counsel at Resentencing
As his fifth issue, Patton argues counsel was ineffective during his resentencing trial. He raises seven claims within this issue. We find each to be without merit.
First, the record conclusively rebuts the allegation that counsel was ineffective for failing to impanel a new jury after jurors read a newspaper article detailing the prior jury's findings. Prior to this incident, counsel had specifically asked the court to tell the resentencing jury exactly what had happened in the previous trial. The newspaper article did nothing more than what counsel had previously requested. Counsel cannot be ineffective for failing to object when the record proves counsel wanted the jury to know the prior jury had been deadlocked. The court cannot view this issue with the heightened perspective of hindsight and determine that counsel's strategic decision was ineffective assistance of counsel. See Rose v. State, 675 So.2d 567 (Fla.1996) (holding disagreement with trial counsel's choices as to strategy was not ineffective assistance of counsel); see also Cherry v. State, 659 So.2d 1069 (Fla.1995) (concluding standard is not how current counsel would have proceeded in hindsight). Therefore, the court did not err in summarily denying this claim.
Patton alleges as his second claim of counsel's ineffectiveness during resentencing the failure of counsel to request removal of the trial judge based on contrary rulings and communication with the victim's mother during a recess. The mere fact that a trial judge makes rulings that are adverse does not give a defendant basis to remove the judge. Accordingly, this claim is without merit. See Barwick v. State, 660 So.2d 685, 692 (Fla.1995); Jackson v. State, 599 So.2d 103, 107 (Fla. 1992). In addition, we find Patton's blanket statement that the judge talked to the victim's mother during a recess to be insufficient to establish that the judge acted improperly. Accordingly, Patton's allegations do not demonstrate counsel should have filed a motion to dismiss the judge. See Valle v. State, 705 So.2d 1331 (Fla. *392 1997). Since the issue was insufficiently pled, it was not error to summarily deny it.
Third, Patton claims counsel was not ineffective for failing to seek a competency hearing prior to the resentencing. This claim was insufficiently pled because there were no specific instances of abnormal behavior alleged that would have put counsel on notice that his client may have been incompetent for resentencing. Without such allegations, there was no basis to find counsel should have asked for such a hearing. Therefore, this claim was legally insufficient.
Fourth, Patton's claim that counsel was ineffective for failing to properly investigate and present mitigating evidence is also without merit. Patton alleges counsel should have had his mother testify. There is no allegation that his mother or any other witnesses could have provided any mitigation not presented by his sister and stepsister.[9] Counsel cannot be ineffective for failing to present cumulative mitigation. See Valle, 705 So.2d at 1334.
Fifth, Patton alleges counsel should have called additional witnesses to corroborate the mitigation presented by his sister and stepsister. Much of the information provided by these witnesses was corroborated by the expert witnesses. Additionally, Patton has failed to indicate that there are persons available who would corroborate the sisters' testimony and has failed to specify the degree of corroboration. Moreover, Patton's sister and stepsister provided not only adequate but substantial mitigation. Counsel cannot be incompetent for failing to present cumulative evidence. This allegation also has not been sufficiently pled.
Patton alleges as the sixth instance of ineffective assistance at resentencing that the mental health experts were not provided with adequate background history to make an accurate assessment of his mental and drug-related problems. This allegation is also conclusively rebutted by the record because Dr. Krop and Dr. Toomer, defense experts, were provided with school, social worker, doctor, hospital, and prison records, background information obtained from Patton's family, and the trial transcripts from the original trial.
Lastly, Patton argues counsel was ineffective for failing to properly inform Dr. Krop of the legal definition of insanity. While Dr. Toomer's change of opinion between the trial and the resentencing called his understanding of the proper legal standard into issue, there is no basis for the Court to conclude Dr. Krop also failed to understand the legal definition of insanity under Florida law. Dr. Krop is an experienced expert witness who has evaluated over 400 patients to determine competency and mitigation, and has testified on behalf of defendants in over 45 cases. Dr. Krop was aware of the legal definition of insanity; he found Patton sane at the time he shot the police officer. There is simply no basis in the record to support Patton's claim that Dr. Krop was not aware of the proper legal definition of insanity. Therefore, counsel had no reason to question Dr. Krop's understanding of the legal principles applicable to this case. The trial court correctly summarily denied this claim.

Brady Violation
In his sixth issue, Patton argues the *393 State committed Brady[10] violations. However, in his reply brief, Patton conceded there were no Brady violations, but instead argued counsel was ineffective for failing to utilize evidence related to a voluntary intoxication defense. This issue was discussed previously under the ineffectiveness claim.

Competency Hearing/Ineffective Assistance of Counsel
In his seventh and eighth issues, Patton argues his competency hearing was inadequate and counsel was ineffective for failing to inform the mental health experts of Patton's history of mental illness. The competency issue is procedurally barred because it should have been raised on direct appeal. See Johnston v. Dugger, 583 So.2d 657, 659 (Fla.1991). The claim that counsel was ineffective for failing to properly inform the court-appointed experts of Patton's history of mental illness is insufficient to overcome the procedural bar. See Kennedy v. State, 547 So.2d 912 (Fla.1989). Furthermore, this claim is without merit because Patton has not shown that he was prejudiced by counsel's alleged failure to inform the experts. See Strickland, 466 U.S. at 668, 104 S.Ct. 2052. Two of the four court-appointed experts, who had previously found Patton competent to stand trial, testified at his resentencing. Prior to their testimony, each reviewed the hospital records. Both experts testified that the additional information did not change their opinions about Patton's sanity. Thus, the record demonstrates that even if counsel had provided these experts with more information at the original competency hearing, they still would have found Patton competent to stand trial. Accordingly, this claim was properly summarily denied.
As a corollary to the substantive competency claim, Patton also argues counsel was ineffective for failing to provide the four court-appointed experts with proper background history with regard to his previous confinement in mental hospitals. This claim is without merit for the same reason stated above. Two of the experts were later given this information and they both testified that it would not have affected their opinion that Patton was competent to stand trial.

Bias of the Trial Judge and Resentencing Judge/Ineffective Assistance
Patton, in his ninth issue, alleges both that the trial judge was biased and that counsel was ineffective for failing to request the trial judge be removed for making biased decisions.[11] The record supports the conclusion that all of the trial judge's decisions were either proper, did not affect the outcome, or were addressed on direct appeal and are not subject to review in this postconviction proceeding. Therefore, there is no basis to find that counsel was ineffective for failure to file a motion to recuse. First, Patton alleges the trial judge was biased for rushing to trial before counsel had an adequate opportunity to prepare. This claim is conclusively refuted by evidence that the trial judge granted defense counsel a two-month continuance and a two-week continuance. No other continuances were requested during the guilt phase of the trial.
Next, Patton claims the trial judge was biased for refusing to grant a continuance prior to the penalty phase. Patton cannot demonstrate any prejudice *394 stemming from this claim because the case was remanded for resentencing.
Patton's argument that the trial judge was biased for scheduling a competency hearing before his arraignment and before counsel was assigned likewise does not entitle him to relief. He cannot demonstrate any prejudice based on this decision because counsel also requested a competency hearing.
Patton next alleges the trial judge was biased because he held ex parte proceedings. This claim is procedurally barred and without merit as discussed above. Patton also claims the trial judge was biased in denying the request for additional peremptory challenges. This claim is procedurally barred because it was raised on direct appeal. See Patten, 467 So.2d at 979. He argues the trial judge was biased because he denied counsel an opportunity to be heard on the effect of the media's presence in the courtroom. This issue too was raised and rejected on direct appeal. See id.
Patton argues the trial judge was biased because he denied counsel adequate funds to properly prepare the defense necessary to ensure a fair trial. This claim is conclusively rebutted by the record because all funds counsel requested were granted and the judge gave counsel the opportunity to request additional funds as necessary. Counsel consulted with other lawyers, mental health experts, investigators, ballistic experts, and jury consultants. Patton has failed to allege or demonstrate what additional persons or funds were needed.
Lastly, Patton contends the trial judge was biased because he made inflammatory comparisons between the defendant and Satan or Hitler in front of the jury. This claim is conclusively rebutted by the record. The trial judge made these references during the questioning of a juror who was opposed to the death penalty. In an effort to determine how deep-rooted her opposition was, the trial judge asked the juror if she would feel the same way if the defendant was Satan or Hitler. There was certainly no comparison made between Patton and either Satan or Hitler. None of the allegations of bias by the trial judge either individually or collectively demonstrate bias or prejudice by the trial judge.
Patton also alleges the resentencing judge was biased and that defense counsel was ineffective for failing to request removal of the resentencing judge based upon his biased decisions. All of Patton's allegations are without merit. First, he alleges the resentencing judge was biased because he did not impanel a new jury after the jury read a newspaper article that stated the prior jury had been deadlocked but ultimately returned with a death recommendation. This claim is conclusively rebutted by the record. The resentencing judge offered to impanel a new jury; however, counsel made a strategic decision not to do so.
Patton further argues the resentencing judge acted with bias by making it known to counsel that he believed in the death penalty. This claim is also conclusively rebutted by the record. The comment complained of was made by the judge, out of the presence of the jury, after the prosecutor objected to the judge telling the jury the method of execution would be death by electrocution. The judge stated that it was the truth and most people, including himself, believed in it. When the comment is taken in this context it demonstrates the judge was not biased, rather he was refuting the prosecutor's objection. See Jernigan v. State, 608 So.2d 569 (Fla. 1st DCA 1992).
*395 Patton alleges the resentencing judge was biased in not allowing evidence of his sister's suicide in mitigation. Patton cannot demonstrate that the decision to exclude this evidence affected the outcome of his case in light of the substantial amount of mitigating evidence that was presented. See Strickland, 466 U.S. at 668, 104 S.Ct. 2052. Finally, Patton claims the resentencing judge was biased because he talked to the victim's mother in public view. This claim is insufficiently pled as discussed above with regard to the ineffective assistance of counsel claim. The defense has failed to demonstrate that the either the trial judge or the resentencing judge was biased. Therefore, defense counsel cannot be found ineffective for failing to request recusal of the trial or resentencing judge. Accordingly, this claim was properly summarily denied.

Constitutional Error
As issue eighteen, Patton alleges counsel was ineffective for failing to object to various constitutional errors. Specifically, he claims the following as constitutional error: (1) the aggravating and mitigating circumstances instruction shifted the burden to Patton to prove a life sentence was appropriate; (2) the State and the resentencing judge relieved the jury from the weight of its decision to recommend death by telling the jury its decision was only a recommendation and that the final decision would be imposed by the judge; and (3) the State argued nonstatutory aggravating factors including the statements that Patton killed a young officer and was a drug dealer who often became violent when he was without drugs. Patton has failed to demonstrate that the instructions given or the arguments made during the penalty phase were error; therefore, counsel cannot he held ineffective for failing to object to them.
Appellate counsel alleged on appeal that the State argued nonstatutory aggravation by referring to the fact that the victim was a police officer. This court addressed the issue on the merits and concluded the argument "was allowable and did not deny Patten's right to due process or a fair trial." Patten, 598 So.2d at 62. Patton's other alleged constitutional errors, the burden-shifting and Caldwell[12] claims, were not raised as ineffective assistance of counsel claims in Patton's motion below and cannot be considered as such for the first time on appeal. In addition, the underlying burden-shifting and Caldwell error claims are legally insufficient and conclusively rebutted by the record. Because there was no error demonstrated concerning these issues, counsel cannot be ineffective for failing to object. These claims were properly summarily denied.

Timing of Postconviction Motion
Patton argues his motion for postconviction relief was improperly accelerated. This claim is without merit. See Roberts v. State, 568 So.2d 1255 (Fla.1990); Cave v. State, 529 So.2d 293 (Fla.1988). Patton was allowed to amend his motion after the two-year period had expired. Thus, he has been allowed additional time to file the motion, not deprived of adequate time.

Conclusion
For the reasons expressed above, we remand this case to the trial court for an evidentiary hearing on the claims relating to whether counsel was ineffective for failing to raise voluntary intoxication or insanity as a defense to first-degree murder. *396 In all other respects we affirm the trial court's summary denial of Patton's 3.850 motion.
It is so ordered.
WELLS, C.J., and SHAW, HARDING, PARIENTE, LEWIS and QUINCE, JJ., concur.
ANSTEAD, J., concurs in part and dissents in part with an opinion.
ANSTEAD, J., concurring in part and dissenting in part.
I write separately to address a fundamental injustice that has occurred in this case and that should be corrected by this Court without further delay. See State v. Owen, 696 So.2d 715, 720 (Fla.1997) ("This Court has the power to reconsider and correct erroneous rulings in exceptional circumstances and where reliance on the previous decision would result in manifest injustice, notwithstanding that such rulings have become the law of the case."); Preston v. State, 444 So.2d 939, 942 (Fla.1984).
Under Florida law when a sentencing jury is divided six to six as to its sentencing recommendation, this vote must be accepted as a recommendation for a life sentence. This is precisely what happened in Patton's case, although this Court has previously rejected his claim that he is entitled to the benefit of the jury's split. See Patten v. State, 467 So.2d 975, 977 (Fla.1985) ("During sentencing deliberations, the jury advised the trial judge that they were deadlocked six-to-six with regard to a recommended sentence.") This Court's prior rejection of this claim is patently erroneous and without support in fact or law. It is also important to note that this mistake cannot be attributed to the State since the State has previously urged this Court to treat the jury's split vote as a recommendation of life. The State was obviously correct. Double jeopardy principles also guarantee that a life recommendation, once secured, cannot be taken away.
Moreover, because there is no factual dispute about the jury's split and because our prior erroneous ruling could result in Patton's life being unlawfully taken, we should recognize our error as fundamental and correct it at once. The existence of this fundamental flaw in this almost twenty-year-old case is simply another illustration of the need for careful scrutiny of all cases in which the death penalty is imposed.
NOTES
[1] Pattern's name was spelled "Patten" in the direct appeal and resentencing appeal opinions. See Patten v. State, 467 So.2d 975 (Fla. 1985); Patten v. State, 598 So.2d 60 (Fla. 1992). References to these two opinions will contain the spelling as it appears in the opinions.
[2] Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).
[3] Patton argues the lower court erred by: (1) summarily denying his claims; (2) improperly dismissing his motion for lack of verification; (3) denying his public records request and the request for the police booking tape; (4) finding counsel was effective during the guilt phase of the trial; (5) finding counsel was effective during the resentencing trial; (6) finding the state did not commit a Brady violation by failing to disclose that Patton had a cigarette package containing white paper and pills at the time he was arrested; (7) not finding counsel was ineffective for failing to request a competency hearing prior to his resentencing and failing to provide the experts who testified at resentencing with necessary psychological background; (8) not finding counsel was ineffective for failing to provide the courtappointed psychiatrists or defense experts with available documentation of Patton's history of mental problems prior to the competency hearing which preceded the guilt phase of the trial; (9) finding counsel was not ineffective for failing to object to the trial and the resentencing judges' bias; (10) failing to suppress statements taken by law enforcement that were illegally obtained; (11) failing to find that the presence of uniformed police officers prejudiced the jury; (12) failing to find this Court's decision to remand Patton's case for resentencing violated the double jeopardy clause; (13) failing to find that the death recommendation was improper because the jury was not instructed that two of the aggravating factors should have been merged; (14) failing to finding that Patton was not eligible for the death penalty because two of the aggravating factors should have been merged; (15) not finding that the resentencing judge erred in failing to find nonstatutory mitigation; (16) failing to find the death sentence was based upon an unconstitutional prior conviction; (17) failing to find the state exercised its discretion to seek the death penalty based upon racial considerations; (18) failing to find counsel was ineffective for failing to object to constitutional errors; (19) failing to hold the death penalty unconstitutional; and (20) allowing the motion for postconviction relief to be improperly accelerated.
[4] The issues this Court will not address are issues 10-17 and 19 as they are listed above.
[5] This holding is limited to these specific facts and would caution trial courts that the more prudent approach is for courts to draft their own orders.
[6] Counsel was also utilizing a jury consultant/psychologist, which affected the voir dire strategy.
[7] Patton's claims that the trial court rendered counsel ineffective by allowing the media in the courtroom, by not appointing co-counsel, and by holding ex parte communications are issues which were or could have been raised on direct appeal and are now being presented in the guise of ineffective assistance of counsel claims.
[8] Patton's argument concerning the failure to cross-examine witnesses concerning ownership of the drug paraphernalia in the car should be explored during the evidentiary hearing concerning the intoxication and insanity defenses.
[9] In fact, his mother denied much of the abuse alleged by Mr. Patton's sister and step-sister.
[10] Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
[11] Some of the same issues and arguments concerning the trial court's alleged bias were raised and addressed as part of issue five above and will not be stated again in these arguments.
[12] Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985).