# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
Remanded by the Supreme Court on December 19, 2016

## SAMUEL C. CLEMMONS, ET AL. v. JOHNNY NESMITH

**Appeal from the Chancery Court for Williamson County**
**No. 43480    Michael Binkley, Judge**

_____

**No. M2016-01971-COA-T10B-CV – Filed February 6, 2017**
_____

In this accelerated interlocutory appeal, Appellants appeal from separate orders denying two motions for recusal filed in this case. After thoroughly reviewing the record on appeal, we affirm the decision of the trial court to deny the recusal motions.

**Tenn. Sup. Ct. 10B Interlocutory Appeal as Right; Judgment of the Chancery Court Affirmed**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and RICHARD H. DINKINS, J., joined.

Joshua David Wilson, Brentwood, Tennessee, and Brandy Murphy Lee, Birmingham, Alabama, for the appellants, Samuel C. Clemmons, and Shannon N. Clemmons.

Virginia Lee Story, Franklin, Tennessee and Kathryn Lynn Yarbrough, Nashville, Tennessee, for the appellee, Johnny Nesmith.

## OPINION

### BACKGROUND

This is an appeal from the denial of two motions for recusal, which has already been the subject of one Opinion by this Court. *See Clemmons v. Nesmith*, No. M2016-01971-COA-T10B-CV, 2016 WL 6583790 (Tenn. Ct. App. Nov. 4, 2016) (hereinafter "*Clemmons I*"). According to our prior Opinion:

> On August 4, 2014, Defendants/Appellants Samuel C. Clemmons and Shannon N. Clemmons (together with Mr. Clemmons, "Appellants"), along with their company, Elite Emergency, LLC filed a lawsuit in

Williamson County Circuit Court ("circuit court case") against Johnny Nesmith, Russell Morrow, Wanda Jones, Kelly Pendergrass, Tiffany Jones, and other parties. On August 27, 2014, Plaintiff/Appellee Mr. Nesmith filed an action against Appellants in the Williamson County Chancery Court ("chancery court case").

*Clemmons I*, 2016 WL 6583790, at *1. Mr. Nesmith is the biological father of Ms. Clemmons. In addition, it appears that a federal case was also pending involving similar subject matter, parties, and attorneys as the state court cases. As we explained in *Clemmons I*:

> Appellants thereafter filed a motion to dismiss the chancery court case, arguing that the claims asserted therein were compulsory counter-claims that must be raised in the pending circuit court case. This appeal results solely from the chancery court case.
> Appellants allege that while the motion to dismiss was pending, Judges Joseph A. Woodruff and Michael Binkley engaged in an ex parte communication with counsel for some of the defendants in the circuit court case. The alleged communication took place on November 21, 2014.

*Id.* On November 25, 2014, Judge Woodruff entered an order sua sponte staying discovery in the circuit court case pending resolution of the related federal court case.

The trial court, Judge Binkley presiding, eventually denied the motion to dismiss the chancery court case by order of March 31, 2015. Therein, the trial court ruled that the claims in the chancery court action were "not logically related" to the claims in the circuit court action. Appellants later filed a motion to consolidate the two cases for limited discovery purposes. An order was entered consolidating the cases for discovery purposes of September 25, 2015.

Appellants filed a motion to lift the discovery stay in the circuit court action on September 30, 2015. Specifically, Appellants cited their need to depose one of the defendants from the circuit court action, Wanda Jones, to defend against the chancery court claims. According to Appellants, they had previously subpoenaed Ms. Jones to appear for a deposition; however, the subpoena was quashed due to the stay on discovery in the circuit court case. Appellants argued that the "order of consolidation cannot be given the intended effect without lifting the stay as to the claims and discovery with" the circuit court defendants.

The motion to lift the stay was heard on or about January 14, 2016. Judge Binkley thereafter sent the parties a letter indicating that he would enter an order on the motion

"by the end of February 2016."[1] No order on the motion was entered, however, until April 4, 2016, approximately twenty days prior to the scheduled trial in the chancery court action. On April 4, 2016, Judge Binkley lifted the stay on discovery in the circuit court case, noting that the federal court had indicated that no stays of the state court actions were necessary. Thereafter, the parties engaged in a multitude of discovery disputes. In one instance, the trial court ordered Appellants to propound discovery to defendants in the circuit court action by 9:00 am on April 13, 2016, the day after the hearing on the discovery dispute. When Appellants only emailed the discovery requests to Mr. Nesmith's counsel by the required time, the trial court ordered that the individuals were not required to respond to the discovery requests.

As we detailed in *Clemmons I*:

> Eventually, on April 15, 2016, Appellants filed their first motion for disqualification in the chancery court case. In their motion, Appellants raised the existence of the alleged November 21, 2014 ex parte communication between Judges Woodruff and Binkley and counsel for some of the defendants in the circuit court case.

*Id.* Specifically, Appellants noted that counsel for Ms. Jones, a defendant in the circuit court case and witness in the chancery court case, filed a detailed invoice of charges in support of his attorney's fee request in the related federal court action. The invoice contained the following entry:

| 11/21/14 | MTH | **At Schell & Davies law firm party in Franklin with Trevor. Meet Judges Woodruff and Binkley and others. Meet Virginia Story and discuss case.** | **1.50** |

Ms. Story serves as counsel for Mr. Nesmith. Appellants alleged that this entry indicated that counsel for Ms. Jones had an ex parte communication with Judge Binkley concerning the pending matters. According to Appellants, an appearance of bias necessitating recusal was required by the November 21, 2014 ex parte communication coupled with: (1) Judge Woodruff's sua sponte order staying the circuit court case on November 24, 2014; and (2) Judge Binkley's refusal to timely lift the stay on discovery to allow Appellants to adequately prepare for trial, despite his assurances that such an order would be timely entered.

On April 20, 2016, Judge Binkley's assistant emailed the parties to inform them that the trial judge would deny the motion for disqualification but that he would be

---

[1] The record also contains an agreed order signed by the parties which states that an order on the motion to lift the stay would be entered by January 29, 2016. This order, however, is not signed by the trial judge.

unable to issue a written ruling prior to the scheduled trial date of April 25, 2016. The parties therefore proceeded to trial despite the fact that no written order had been entered disposing of the pending motion for disqualification. After the second day of trial, on May 11, 2016, the trial court entered a written order denying the recusal motion. Rather than detailing the reasoning for his decision in the order, the trial court attached to the order his own affidavit. In relevant part, the affidavit contained the following statements on behalf of Judge Binkley:

> B.     I recall being at a Christmas party at Schell & Davies law firm in Franklin, Tennessee, at the end of the month in November 2014. I barely remember saying "hello" to Mr. Harris, Judge Woodruff, and Mrs. Story, attorney for [Mr. Nesmith], but I would not, certainly, under any circumstances, discuss with any attorney or party to a lawsuit, the facts of a case or even bring up the case itself for any reason whatsoever. I never had an ex parte communication with Mrs. Story or Mr. Harris regarding any case, much less the present case, at the Christmas party mentioned above on or about November 21, 2014.
>
> C.      In reviewing the pleadings in the file, my recollection is I have provided to the [Appellants'] attorneys in this case absolutely every opportunity to conduct complete and thorough discovery in order to be prepared for trial in this case.
>
> D.     Based upon the pleadings in the file as well as the numerous appearances by counsel for the [Appellants], I am of the distinct impression I have allowed as much time as may be reasonably necessary, under the circumstances of this case, to allow defense counsel to conduct whatever discovery was necessary for the final preparation of this case for trial.
>
> E.      In balancing [Appellants'] request to continue this trial once again against [Mr. Nesmith's] adamant desire to move forward with trial and their continuous statements that the [Appellants] were purposely delaying the trial of this case, I decided I would not continue the trial of this case, but I also decided to allow [Appellants] to conduct discovery if needed, and at the same time, to require both parties to expedite responses to [Appellants'] additional discovery requests sensitive to [Mr. Nesmith's] desire to proceed with the trial of this case without further inordinate delays.

Judge Binkley concluded that an objective person viewing the above facts and the entire record would find that he had acted in a fair and reasonable manner to all parties. Judge Binkley therefore determined that there was neither "a subjective or objective basis that any conduct on my behalf in this case rises to the level of requiring me to recuse myself from presiding over the trial of this case."

The trial proceeded for two more days but the problems encountered in this case were far from over. During the May 20, 2016 trial date, Judge Binkley ordered that two of Appellants' children, a minor daughter and an eighteen-year old son, Sawyer Clemmons, be removed from the courtroom. A transcript of the episode provides as follows:

MS. STORY: . . . . I just would ask for, you know, I mean I just see no reason to have the grandchildren in here.

THE COURT: How old are they?

MS. STORY: They are high school students and one is a college student.

THE COURT: How old are they?

MRS. CLEMMONS: 18 and 15.

THE COURT: Why are they here?

MRS. CLEMMONS: They have been living this and it is their grandfather.

MR. CLEMMONS: To support their parents.

MRS. CLEMMONS: And to support us.

MS. LEE [Counsel for Appellants]: Your Honor, I would also like it to be noted while we are talking about that, that Ms. Story spoke with my client outside the presence of her counsel on the way out the door to lunch about how she disapproved of the way she was handling her kids.

MS. STORY: No, what I said was please don't let them sit in the courtroom during this testimony. I would not -- if I were in divorce court I would not let the kids be in this courtroom. It does not serve any good purpose.

THE COURT: All of this is really a shame. I am telling you, really a shame. Stand by just a moment. Unbelievable. Sir, while you are in my courtroom pay attention, it is about you and is it your sister; is that correct, sir? Is it me? Is that the two kids back there?

MS. STORY: Uh-huh.

THE COURT: The one with the checkered shirt and his sister is right to his left; right?

MS. STORY: Yes.

MS. LEE: Yes, Your Honor.

THE COURT: Please step out, both of you kids, step out. I don't want to see any -- Hey! Hey! Don't cop an attitude with me, either one of you. Sir, do you understand what I'm saying?

SAWYER CLEMMONS: Yes, sir.

THE COURT: Come here. Step up here. [To Mr. Clemmons:] Now, you sit down! In the back, you sit down!

[To Sawyer Clemmons:] Come up here. I don't know if you have ever been in a courtroom before, but don't you -- listen to me, don't you

- 5 -

give me that snide look. Don't you give me that huffing and puffing that you are doing. Do you understand me?

SAWYER CLEMMONS: Yes, Your Honor.

THE COURT: You get out there and you sit down and you mind your own business. Do you understand that?

SAWYER CLEMMONS: Yes, Your Honor.

THE COURT: Do not talk to anyone else about this lawsuit. Do you understand?

SAWYER CLEMMONS: Yes, Your Honor.

THE COURT: Thank you, sir. Step out. If we don't look out here somebody is going to be held in contempt.

[To Mr. Clemmons:] Sir, you step up, you stand up like that again with that type of attitude and you are going to be first. Do you understand?

MR. CLEMMONS: Yes.

Based upon this episode, on August 4, 2016, Appellants filed a "Supplemental and Renewed Motion for Disqualification." The motion alleged that Judge Binkley acted inappropriately in removing Appellants' children from open court during the proceedings. In support of their motion, Appellants filed the affidavits of several individuals present in the courtroom on May 20, 2016, including the affidavits of Sawyer Clemmons and his sister. These affidavits generally alleged that Judge Binkley removed the children from the courtroom in a heated and "rude" manner despite the fact that the children were not in any way disruptive prior to being removed. The second motion to recuse also raised the alleged ex parte communication and the delay in allowing discovery that had been raised in the initial motion for disqualification. A hearing on the second motion for disqualification was scheduled for August 19, 2016.

Prior to the hearing on the motion, Appellants filed an emergency motion to continue the trial pending resolution of the pending disqualification motion. Therein, Appellants alleged that because the final day of trial was scheduled for August 22, 2016, they would be unable to adequately prepare for the hearing on the recusal motion, contemplate an appeal, if necessary, and then also prepare for the trial of the underlying cause.

At the August 19, 2016 hearing on the second motion to recuse, the parties agreed to waive oral argument regarding the motion and to reset the final day of trial for September 28, 2016. An order was entered to that effect by the trial court on August 24, 2016. The order also provided that the trial court would issue a written order ruling on Appellant's second motion to recuse by August 24, 2016. Despite this assurance that a written order would be forthcoming, the trial court did not enter a written order ruling on the second motion to recuse until nearly a month later, on September 21, 2016.

- 6 -

In the meantime, on or about September 1, 2016, Mr. Nesmith filed several affidavits in support of his contention that recusal was not warranted, including an affidavit from Mr. Nesmith's attorneys, the court reporter present for the hearing, Judge Binkley's court officer, and the Williamson County Chancery Court Clerk and Master, all of whom indicated that they were present for the May 20, 2016 hearing. The affiants generally alleged that Judge Binkley's behavior at the May 20, 2016 hearing was appropriate, that Sawyer Clemmons's and Mr. Clemmons' disrespectful behavior prompted Judge Binkley's comments, and that Judge Binkley had acted ethically and without bias throughout the proceedings. One affiant did admit, however, that Judge Binkley did raise his voice in his discussion with Mr. Clemmons and his son.

Appellants filed a motion in opposition to the filing of the affidavits by Mr. Nesmith on September 8, 2016. Therein, Appellants argued that the affidavits should be stricken as untimely because they were filed after the hearing on the pending motion to recuse. Additionally, Appellants contended that the affidavits of court staff were inappropriate because they placed court staff in an "adversarial position" to Appellants. According to Appellants, this procedure highlighted the fact that an appearance of impropriety had been created in this case.

As previously discussed, Judge Binkley eventually entered an order on the motion to recuse on September 21, 2016. In this order, the trial court again denied Appellants' request for disqualification, this time ruling that he had not exhibited an appearance of impropriety with the way he conducted court on May 20, 2016. Specifically, Judge Binkley described the incident as follows:

> It was also brought to the Court's attention the children were of the ages of 18 and 15. . . . Based upon unsolicited statements of Samuel C. Clemmons and Shannon N[.] Clemmons, the parents of the two children, the children were in the courtroom to "support their parents" apparently against their grandfather, Johnny Nesmith, the Plaintiff. When the two children were identified, the Court noticed the father of the children, Samuel C. Clemmons, made a statement to his son, Sawyer Clemmons, and although the Court could not hear at that time what they were saying, it appeared that both Samuel Clemmons and his son, Sawyer Clemmons, were very animated and agitated as they were discussing some issue in the back of the courtroom. It was clear from the body language of both Samuel C. Clemmons and Sawyer Clemmons there was some type of agitation or disagreement, or some other problem or issue between Samuel C. Clemmons and Sawyer Clemmons. Regardless, when the Court saw the heightened activity, the Court decided it would be best to have both children leave the courtroom. The Court therefore asked both children to leave. At almost the same moment as the Court made this request, Sawyer Clemmons would not leave the courtroom and rolled his eyes at the Court

and made some statement to Samuel C. Clemmons and then some statement to the Court in disgust but still refused to leave the courtroom. The Court then quickly corrected Sawyer Clemmons because of his attitude and immediately Samuel C. Clemmons stood up in the back of the courtroom with a very defiant posture as to challenge the Court physically. At that moment, Sawyer Clemmons was mouthing some type of objection or statement to the Court and still was not leaving the courtroom. With the combination of Samuel Clemmons'[s] posturing, Sawyer Clemmons'[s] defiant conduct, and Sawyer Clemmons'[s] refusal to obey the Court's order to leave the courtroom, the Court decided to be firm with both Samuel Clemmons and Sawyer Clemmons, and the Court therefore cautioned Samuel Clemmons regarding his posture and his attitude, but the Court did not require him to leave. The Court did require Sawyer Clemmons to come to the front of the courtroom as he was still being defiant and not leaving the courtroom and was still discussing something with Samuel Clemmons and disregarding the Court's request that he step out of the courtroom.

Based upon Sawyer Clemmons'[s] disrespect, defiance, and obvious displeasure with being asked to leave the courtroom, and based upon his demeanor and his sarcastic attitude, the Court did lecture him about his attitude by calling him to the front of the courtroom and speaking to him in a very clear and concise manner regarding his very poor attitude and his disrespect for the Court.

Considering these facts,[2] Judge Binkley concluded that even under an objective standard, no appearance of impropriety was created by the events of May 20, 2016. Rather, Judge Binkley determined that reasonable persons would conclude that his statements and conduct were necessary "in order to maintain the integrity and respect for the court proceedings in the face of disrespectful and defiant conduct[.]" Finally, Judge Binkley reiterated his previous ruling on the first motion to recuse concerning the alleged ex parte communication and the purported delay in allowing discovery in the chancery court action. On the next day, September 22, 2016, the trial court entered an order resetting the final trial date to October 7, 2016.

Appellants filed an accelerated interlocutory appeal pursuant to Rule 10B of the Rules of the Tennessee Supreme Court on September 29, 2016. Concurrently with their recusal appeal, Appellant filed a motion with this Court to stay the trial court proceedings pending resolution of the recusal issue. This Court granted the stay on October 4, 2016, and directed Mr. Nesmith to file a response to the recusal appeal. Mr. Nesmith filed his response on October 20, 2016.

---

[2] Judge Binkley specifically stated that he had not considered any of the various affidavits filed by the parties concerning the incident.

This Court issued its Opinion in ***Clemmons I*** on November 4, 2016. Therein, we ruled that several procedural deficiencies were fatal to review of both the April 15, 2016 initial motion to recuse and the August 4, 2016 second recusal motion. *See **Clemmons I***, 2016 WL 6583790, at *4–5. On November 8, 2016, Appellants filed a petition to rehear along with a motion to supplement the record, seeking to correct some of the deficiencies noted in ***Clemmons I***. We denied the motion and petition by order of November 10, 2016, noting that Rule 10B of the Rules of the Tennessee Supreme Court prohibited petitions to rehear in accelerated interlocutory recusal appeals.

Appellant thereafter took their recusal appeal to the Tennessee Supreme Court, which entered an order remanding the case to this Court on December 19, 2016. The Tennessee Supreme Court did not vacate any portion of ***Clemmons I*** but determined that, regardless of whether "the applicants failed to satisfy procedural requirements, in the unusual circumstances of this case, the intermediate appellate court must proceed to address the merits of each issue raised on appeal." Accordingly, although we continue to believe that Appellants failed to comply with the procedure mandated by the Tennessee Supreme Court in Rule 10B, as expressed more fully in ***Clemmons I***, see ***id.***, we nevertheless proceed to determine the substantive merits of Appellants' recusal requests, as directed by our supreme court.

## ANALYSIS

In this case, Appellants appeal the denial of both their April 2016 and August 2016 motions to recuse Judge Binkley. The Tennessee Code of Judicial Conduct is contained in Rule 10 of the Tennessee Supreme Court Rules ("Code of Judicial Conduct"). *See* Tenn. Sup. Ct. R. 10. Canon 2.11 of the Code of Judicial Conduct provides that "[a] judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned[.]" Tenn. Sup. Ct. R. 10, Canon 2.11(A). It is well-settled that "'[t]he right to a fair trial before an impartial tribunal is a fundamental constitutional right.'" ***Bean v. Bailey***, 280 S.W.3d 798, 803 (Tenn. 2009) (quoting ***State v. Austin***, 87 S.W.3d 447, 470 (Tenn. 2002)). Article VI, Section 11 of the Tennessee Constitution, Tennessee Code Annotated section 17-2-101, and the Code of Judicial Conduct prohibit a judge from presiding over a matter in which the judge has an interest in the outcome or where the judge is connected to either party. The purpose of the prohibition is to "guard against the prejudgment of the rights of litigants and to avoid situations in which the litigants might have cause to conclude that the court [] reached a prejudged conclusion because of interest, partiality, or favor." ***State v. Austin***, 87 S.W.3d 447, 470 (Tenn. 2002) (citation omitted). Additionally, we have emphasized that "the preservation of the public's confidence in judicial neutrality requires not only that the judge be impartial in fact, but also that the judge be perceived to be impartial." ***Kinard v. Kinard***, 986 S.W.2d 220, 228 (Tenn. Ct. App. 1998) (citations omitted). Accordingly, even in cases wherein a judge sincerely believes that she can preside over a matter fairly

and impartially, the judge nevertheless should recuse herself in cases where a reasonable person "'"in the judge's position, knowing all the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality.'" ***Davis v. Liberty Mut. Ins. Co.***, 38 S.W.3d 560, 564–65 (Tenn. 2001) (quoting ***Alley v. State***, 882 S.W.2d 810, 820 (Tenn. Crim. App. 1994)). It is an objective test designed to avoid actual bias and the appearance of bias, "since the appearance of bias is as injurious to the integrity of the judicial system as actual bias." ***Id.*** at 565 (citation omitted).

Pursuant to Rule 10B of the Rules of the Tennessee Supreme Court, a litigant is entitled to seek disqualification of a trial judge by filing a motion that: (1) is supported by an affidavit under oath or a declaration under penalty of perjury by personal knowledge or by other appropriate materials; (2) states, with specificity, all factual and legal grounds supporting disqualification of the judge; and (3) affirmatively states that it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. Tenn. Sup. Ct. R. 10B, § 1.01.

Upon the filing of such motion, "the judge whose recusal is sought shall either grant or deny the motion in writing." ***Watson v. City of Jackson***, 448 S.W.3d 919, 927 (Tenn. Ct. App. 2014). If the motion is denied, the judge shall state in writing the grounds for the denial. Tenn. Sup. Ct. R. 10B, § 1.03. Additionally, if the motion is denied, the movant may file an accelerated interlocutory appeal of the denial. According to section 2.02 of Rule 10B of the Rules of the Tennessee Supreme Court:

> To effect an accelerated interlocutory appeal as of right from the denial of the motion, a petition for recusal appeal shall be filed in the appropriate appellate court within fifteen days of the trial court's entry of the order. In civil cases, a bond for costs as required by Tenn. R. App. P. 6 shall be filed with the petition. A copy of the petition shall be promptly served on all other parties, and a copy also shall be promptly filed with the trial court clerk.

Tenn. Sup. Ct. R. 10B, § 2.02. The movant is also required to include copies of "any order or opinion and any other parts of the record necessary for determination of the appeal." ***Id.*** § 2.03. We review the trial court's denial of a motion to recuse "under a de novo standard of review." ***Id.*** § 2.01.

In their recusal appeal to this Court, Appellants essentially cite three facts that they contend collectively support disqualification in this case: (1) the alleged ex parte communication between Judge Binkley and counsel for a party in the circuit court case; (2) Judge Binkley's delay in adjudicating motions; and (3) Judge Binkley's inappropriate behavior at the May 20, 2016 hearing and the resulting affidavits from Judge Binkley's staff filed in opposition to the second recusal motion. We consider these issues both

individually and collectively to determine whether an appearance of impropriety is present that warrants recusal.

## Ex Parte Communication

We begin first with Appellants' allegation concerning the alleged November 21, 2014 communication between Judge Binkley and counsel for a defendant in the related circuit court action. As an initial matter, we note that communications with a judge outside the presence of both parties are generally prohibited by the Code of Judicial Conduct. Canon 2.9(A) states that a judge shall not "initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding." Tenn. Sup. Ct. R. 10, Canon 2.9(A) (describing certain exceptions, such as scheduling or administrative issues). As the comments to Canon 2.9 explain: "To the extent reasonably possible, all parties or their lawyers shall be included in communications with a judge." *Id.* at Canon 2.9, cmt. 1. Furthermore: "The proscription against communications concerning a proceeding includes communications with lawyers, law teachers, and other persons who are not participants in the proceeding, except to the limited extent permitted by this Rule." *Id.* at Canon 2.9, cmt. 3. If, however, "a judge receives an unauthorized ex parte communication bearing upon the substance of a matter," then "the judge shall make provision promptly to notify the parties of the substance of the communication and provide the parties with an opportunity to respond." Tenn. Sup. Ct. R. 10, Canon 2.9(B). As the above rules suggest, only those communications "concerning a pending or impending proceeding" or "bearing upon the substance of a matter" are prohibited by the Code of Judicial Conduct. *See* Tenn. Sup. Ct. R. 10, Canons 2.9(A)–(B). Additionally, an ex parte communication will only serve as an appropriate ground for the recusal of a trial judge "where it creates an appearance of partiality or prejudice against a party so as to call into question the integrity of the judicial process." *Runyon v. Runyon*, No. W2013-02651-COA-T10B-CV, 2014 WL 1285729, at *9 (Tenn. Ct. App. Mar. 31, 2014) (citing *Malmquist v. Malmquist*, 415 S.W.3d 826, 839–40 (Tenn. Ct. App. 2011)).

After reviewing the documents provided to this Court in conjunction with this recusal appeal, we cannot conclude that Judge Binkley engaged in a prohibited communication, that is, a communication either "concerning [the] pending or impending proceeding" or "bearing upon the substance of [the underlying] matter." *Id.* We note that Appellants have not provided this Court with any evidence regarding the alleged ex parte communication beyond what was contained in the attorney's fees invoice filed in federal court. As previously discussed, this notation merely indicates that counsel for a defendant in the circuit court action "met" Judges Woodruff and Binkley at a holiday party and that counsel thereafter conferenced with Mr. Nesmith's attorney regarding the case. Nothing in the notation indicates that either Judges Woodruff or Binkley were in any way involved in the conference regarding the case, the length of the communication between

the Judges and the counselor, or the substance of the communication between the judges and the counselor.

A somewhat similar issue was raised in *State v. Jones*, 735 S.W.2d 803 (Tenn. Crim. App. 1987), though the question in *Jones* involved not whether a new trial judge was required to preside over future proceedings, but instead whether a new trial was required due to an erroneous criminal conviction. In *Jones*, the trial judge and the prosecutor in the case engaged in an ex parte conversation in the middle of trial. *Id.* at 810. The Court of Criminal Appeals held that the conversation did not necessitate a new trial because "the trial court reassured defendant that the ex parte conference did not involve matters related to this case." *Id.* In another case, *Minor ex rel. Hardin v. State*, No. M2001-00545-CCA-R10-PC, 2001 WL 1545498 (Tenn. Crim. App. Dec. 5, 2001), the defendant alleged that the trial judge engaged in an out-of-court conversation with a prospective expert witness for the defendant. The Court of Criminal Appeals, under the deferential abuse of discretion standard,[3] held that the trial court did not err in refusing to grant a motion to recuse. In support of its ruling, the Court of Criminal Appeals noted that the defendant did not allege that the trial judge and prospective expert discussed the merits of the pending matter. *Id.* at *10. As the Court of Criminal Appeals explained: "Nothing in the disciplinary rules for judges or lawyers prohibits judges, lawyers and professors of law from communicating with one another about unrelated matters when they are involved in varying capacities in ongoing litigation, and no improper appearance is generated in the usual circumstances." *Id.*

The same is true in this case. Other than the vague notation that counsel for a party in the circuit court action "met" Judge Binkley at a holiday party, there is simply no indication that any of the merits of the case were discussed or that the interaction was anything more than passing social contact. "The mere existence of a friendship between a judge and an attorney is not sufficient, standing alone, to mandate recusal." *State v. Cannon*, 254 S.W.3d 287, 308 (Tenn. 2008); *see also State v. Madden*, No. M2012-02473-CCA-R3-CD, 2014 WL 931031, at *7 (Tenn. Crim. App., filed Mar. 11, 2014) ("Simply establishing that a trial judge is acquainted with a lawyer or other person connected to a case does not, without more, suffice to establish an abuse of discretion in

---

[3] Under the previous version of Rule 10, the denial of a motion to recuse was reviewed for an abuse of discretion. *See id.* at *10; *see also Malmquist v. Malmquist*, 415 S.W.3d 826, 836 (Tenn. Ct. App. 2011) ("A judge's decision to grant a recusal is within his or her discretion.") (citing *Bean v. Bailey*, 280 S.W.3d 798, 805 (Tenn. 2009); *Bd. Of Prof'l Responsibility v. Slavin*, 145 S.W.3d 538, 546 (Tenn. 2004)). By order of January 4, 2012, however, the Tennessee Supreme Court amended the Code of Judicial Conduct and adopted "new" Rule 10B as an addition to the Tennessee Supreme Court Rules, effective as of July 1, 2012. *See In re: Petition for the Adoption of Amended Tennessee Code of Judicial Conduct Together with Changes in Rules and Statutes*, No. M2011-00420-SC-RL1-RL, at 2 (Tenn. 2012). Under the current version of Rule 10B, this Court reviews a trial court's decision to deny a motion to recuse de novo, with no presumption of correctness afforded to the trial court's ruling. *See* Tenn. Sup. Ct. R. 10B, § 2.01 ("[T]he trial court's ruling on the motion for disqualification or recusal shall be reviewed by the appellate court under a de novo standard of review[.]").

the denial of a recusal motion."). As such, "[t]he Code of Judicial Conduct does not require judges to remain isolated from other members of the bar and from the community." *Cannon*, 254 S.W.3d at 308. We note, however, "[w]hen engaging in physical and online contact with members of the community," a judge "must at all times remain conscious of the solemn duties [he or she] may later be called upon to perform." *Madden*, 2014 WL 931031, at *8. In the absence of any evidence that the case was discussed at the November 21, 2014 social event referenced in the initial motion to recuse, we cannot conclude that this communication constitutes an ex parte communication sufficient to necessitate recusal in the case.

## Delay

Appellants argue, however, that while the ex parte communication, alone, may be insufficient to show an appearance of impropriety sufficient to warrant recusal, the existence of the communication coupled with the timing of Judge Woodruff's decision to stay discovery in the circuit court case, Judge Binkley's delay in removing the stay for purposes of discovery in the chancery court case, and the numerous allegedly erroneous decisions made against Appellants collectively illustrate a bias or prejudice against Appellants that warrants recusal. First, we note that the recusal petition subject to this appeal is directed only toward Judge Binkley, as the judge presiding over the chancery court action. We have previously noted that our jurisdiction in an accelerated interlocutory appeal pursuant to Rule 10B is limited only to the question of whether the judge in the case-at-bar should have granted a motion to recuse. *See McKenzie v. McKenzie*, No. M2014-00010-COA-T10B-CV, 2014 WL 575908, at *6 (Tenn. Ct. App. Feb. 11, 2014) ("Under Rule 10B our review is limited to the trial court's denial of the recusal motion."). Accordingly, we will only consider whether Judge Binkley erred in refusing to grant Appellants' motions to recuse.

There can be no dispute, however, that this case has been beset with delays, some of which appear to have been at least partly attributable to the trial judge. For example, Appellants filed their motion to lift the stay on discovery on September 30, 2015, which motion was not heard until January 14, 2016. The record is not clear as to the cause of this delay or if the delay was attributable to scheduling issues with the parties. Nevertheless, the record indicates that an order on this motion was expected by the end of January; a subsequent letter directly from the trial court states that an order would be entered by the end of February. The order granting the motion was not entered, however, until April 4, 2016, nearly three months from the time the motion was heard. To further complicate the matter, the order lifting the stay on discovery was entered less than one month ahead of the scheduled trial date, purportedly leaving Appellants scrambling to complete discovery prior to trial.[4]

---

[4] Indeed, while the trial court apparently determined that prompt adjudication of Appellants' motions was not required of it, it placed arguably unfeasible time limits on Appellants. For instance, at

- 13 -

Similar delays occurred with regard to both motions to recuse. First, the trial court delayed entering a written order on the first motion to recuse until May 11, 2016, despite the fact that the motion was filed nearly a month earlier on April 15, 2016, and at least two days of trial had already taken place before the order was entered. A similar situation occurred with regard to the second motion to recuse. The motion was filed on August 4, 2016, a hearing was held on August 19, 2016, and Judge Binkley stated that he would rule on the motion by August 24, 2016 to allow the parties time to adequately prepare for trial. No order, however, was entered until nearly a month after the anticipated date, a mere eight days before the scheduled final day of trial.[5] When the order denying the second motion to recuse was eventually entered, however, it was not signed by Judge Binkley but instead by Judge Woodruff on behalf of Judge Binkley. *See Clemmons I*, 2016 WL 6583790, at *4 n.2 (noting the irregularity of this practice and advising against it unless necessary).

The Code of Judicial Conduct provides that "[a] judge shall perform judicial and administrative duties competently, promptly and diligently." Tenn. Sup. Ct. R. 10, Canon 2.5(A). In addition, Rule 11 of the Rules of the Tennessee Supreme Court outlines the Tennessee Supreme Court's power to supervise Tennessee judges. Among the rules outlined therein, the Tennessee Supreme Court has placed time limits on how long matters may properly be taken under advisement:

> No case may be held under advisement in excess of sixty days and no motion, or other decision of the trial judge that delays the date of trial or final disposition in the trial court, shall be held under advisement for more than thirty days, absent the most compelling of reasons.

Tenn. Sup. Ct. R. 11, § III(c). Finally, we note that Rule 10B expressly requires that "[w]hile the motion [to recuse] is pending, the judge whose disqualification is sought shall make no further orders and take no further action on the case, except for good cause stated in the order in which such action is taken." Tenn. Sup. Ct. R. 10B, § 1.02.

While we understand that matters both personal and professional may often contribute to delays that are neither avoidable nor illustrate an ethical violation, the trial judge here did more than simply hold matters under advisement for long periods of time; rather, the trial court informed the parties that orders would be entered by certain dates,

one hearing, the trial court allowed Appellants only until 9:00 am the next morning to propound discovery to certain individuals. The individuals, in contrast, were allowed seven days to respond to the discovery requests. When only an emailed copy of the discovery arrived by the required time, the trial court ruled that the individuals were not required to respond.

[5] The trial court did enter a subsequent order the day after the entry of the order on the second recusal motion, further delaying the trial.

- 14 -

likely leading the parties to take actions in line with the trial court's assurances, only to repeatedly fail to meet those self-imposed deadlines. Additionally, the trial court judge's action in holding trial without having entered a written order on the initial motion to recuse clearly violates Rule 10B of the Rules of the Tennessee Supreme Court. Still, the record on appeal indicates that the trial court did rule on some motions in a timely fashion and that the delays in entering orders never lasted more than three months from the time the motion was heard by the trial court. Accordingly, the delays experienced in this case are not tantamount to the situations experienced by other litigants in which the Tennessee Supreme Court has ruled that the trial judge violated the Code of Judicial Conduct by its inordinate delay. *See **In re Bell***, 344 S.W.3d 304, 315 (Tenn. 2011) (holding that the Code of Judicial Conduct was violated where the trial judge delayed nine months in issuing a ruling from a bench trial without a credible explanation for the delay). Accordingly, although the trial court's actions are troubling to this Court, we cannot conclude that the trial court's delay in entering order, standing alone, rises to the level of impropriety that would warrant recusal in this case.

In support of our conclusion, we note that Appellants have not cited, nor has our research revealed, any instances in which a trial judge's delay in disposing of motions was held sufficient to necessitate recusal of the trial judge from further proceedings. *See **In re Conservatorship of Tate***, No. M2012-01918-COA-10B-CV, 2012 WL 4086159 (Tenn. Ct. App. Sept. 17, 2012) (holding that a trial judge's violation of Section 1.02 did not require the court to vacate the offending order, where there was no other basis to require recusal of the trial judge). *But see **Carney v. Santander Consumer USA***, No. M2010-01401-COA-R3-CV, 2015 WL 3407256, at *7 (Tenn. Ct. App. May 28, 2015) (vacating an order entered while a motion to recuse was pending where the pro se litigant was "put in the difficult position of" waiting for her motion to recuse to be adjudicated or following the trial court's order, but affirming the trial court's denial of the motion to recuse despite the violation of Rule 10B); ***Rodgers v. Sallee***, No. E2013-02067-COA-R3-CV, 2015 WL 636740, at *5 (Tenn. Ct. App. Feb. 13, 2015) (vacating an order entered while a recusal motion was pending, where the trial judge ultimately granted the recusal motion). Furthermore, the trial judge in this case did endeavor to inform the parties that it was denying Appellants' initial motion to recuse prior to the scheduled hearing; by not entering a written order, however, the trial judge may have deprived Appellants of their right to seek an interlocutory appeal of that denial prior to the trial. Although we are troubled that this case has been somewhat afflicted by a lack of diligence on the part of the trial judge in timely disposition of pending matters, given the totality of the circumstances, we cannot conclude that the delay in entering orders in this case is tantamount to an appearance of impropriety from which recusal would be required.

**Bias or Prejudice**

We next consider whether the numerous rulings against Appellants and the contentious nature of the proceedings as illustrated at the May 20, 2016 hearing are

sufficient to necessitate recusal. The documents on appeal indeed show that the trial judge has ruled against Appellants on numerous occasions, both with regard to substantive motions and discovery disputes. In addition, the transcript of the May 20, 2016 hearing indicates that the trial court acted in a heated manner in excluding Appellants' children from the courtroom, despite the fact that nothing in the transcript indicates that the children were behaving inappropriately prior to being addressed by the trial judge. Appellants argue that both the improper exclusion of the children, as well as the antagonism toward Appellants illustrated through the incident, together require recusal.

The various affidavits in the record on this subject contain conflicting characterizations of both the behavior of Sawyer Clemmons and Judge Binkley. The clear import from the transcripts and affidavits, however, is that the children were not initially called to the trial court's attention for being disruptive, but merely for their presence in the courtroom. Furthermore, none of the affidavits suggest that Appellants' daughter was in any way disruptive, either before or after the trial judge's statements. In fact, rather than citing disruption as the basis for the children's removal, the trial judge instead noted his belief that it was a "shame" to allow the children to be present in the courtroom. Mr. Nesmith offers no argument in his submission to this Court that the trial court was authorized to remove the children from the court room in the absence of any disruption or other situation requiring removal. Indeed, the Tennessee Constitution specifically guarantees that "all courts shall be open[.]" Tenn. Const., art. 1, § 17. Tennessee Supreme Court Rule 11 reflects this same principle, providing that "it is the policy of the Tennessee Judicial Department that all courts of this state shall be open and available for the transaction of business[.]" Tenn. Sup. Ct. R. 11(VII)(b). Based upon these provisions, Tennessee courts "have long recognized that judicial proceedings are presumptively open." *In re NHC-Nashville Fire Litig.*, 293 S.W.3d 547, 560 (Tenn. Ct. App. 2008). As the Tennessee Supreme Court explained:

> The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered.

*State v. Drake*, 701 S.W.2d 604, 607–08 (Tenn.1985) (quoting *Press-Enter. Co. v. Superior Court*, 464 U.S. 501, 506, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984)). Still, "the trial court has the inherent power to preserve order in the courtroom, to protect the rights of the parties, and to further the interests of justice." *State v. Fuqua*, No. 1178, 1991 WL 165195, at *5 (Tenn. Crim. App. Aug. 28, 1991) (citing *Woods v. State*, 490 So.2d 24 (Fla. 1986); 23A C.J.S. Criminal Law §§ 1172, 1175 and 1176). Accordingly, while individuals may be removed from the courtroom to maintain order, the trial court must

follow strict guidelines in removing observers from the court room. Nothing in the record suggests that such rules were followed in this case.

The transcript also shows that Judge Binkley acted in a somewhat angered manner at the May 20, 2016 hearing. The transcript of the hearing characterizes many of Judge Binkley's statements as exclamations. Further, even one of the affiants in support of Mr. Nesmith admitted that Judge Binkley raised his voice during the exchange. Clearly, this hearing evidences that some antagonism is present in this matter not only between the parties, but also directed toward and emanating from the trial judge and his staff.

Tennessee courts have held, however, that complaints regarding the "contentiousness of the proceedings nor any of the trial court's rulings do not constitute 'a reasonable basis for questioning the judge's impartiality.'" *See In re Conservatorship of John Daniel Tate*, No. 2012-01918-COA-10B-CV, 2012 WL 4086159, at *3 (quoting *State v. Hester*, 324 S.W.3d 1, 73 (Tenn. 2010)). We note that it is well-settled that adverse rulings, "even if erroneous, numerous and continuous," may not be sufficient to necessitate recusal. *Alley v. State*, 882 S.W.2d 810, 821 (Tenn. Crim. App. 1994). Indeed, the Tennessee Supreme Court has noted that adverse rulings are necessary byproducts of the adversarial process and the trial judge's role in "assess[ing] the credibility of those who testify before them." *Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 565 (Tenn. 2001). Accordingly, the fact that Judge Binkley has ruled against Appellants multiple times, even if erroneously, is not sufficient on its own to show an appearance of bias or prejudice requiring recusal. Instead, questions regarding the trial court's denial of requested discovery, its enforcement of discovery orders, and its decision to remove Appellants' children from the courtroom should properly be raised in an appeal from the trial court's final judgment or in a properly perfected interlocutory or extraordinary appeal pursuant to the Tennessee Rules of Appellate Procedure. A recusal motion is simply "not the appropriate means" to challenge a trial court's ruling based upon "its interpretation of the facts and the law." *State v. Lowe*, No. M2013-00447-CCA-10B-CD, 2013 WL 706318, at *3–4 (Tenn. Crim. App. Feb. 26, 2013) ("The Appellant will have the opportunity to appeal the [adverse] ruling . . . on direct appeal, if necessary.").

With regard to Appellant's allegations regarding the trial court's bias as reflected through its statements at the May 20, 2016 hearing, we note that "[n]ot every bias, partiality or prejudice merits recusal." *Alley v. State*, 882 S.W.2d 810, 821 (Tenn. Crim. App. 1994). Rather, "[t]o disqualify, prejudice must be of a personal character, directed at the litigant, [and] 'must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from . . . participation in the case.'" *Id.* (quoting *State ex rel. Wesolich v. Goeke*, 794 S.W.2d 692, 697 (Mo. Ct. App. 1990)). "Forming an opinion of litigants and issues based on what is learned in the course of judicial proceedings is necessary to a judge's role in the judicial system." *Groves v. Ernst-W. Corp.*, No. M2016-01529-COA-T10B-CV, 2016 WL 5181687, at *5 (Tenn. Ct.

- 17 -

App. Sept. 16, 2016) (footnote omitted) (citing *Liteky v. U.S.*, 510 U.S. 540, 550–51 (1994)). As this Court explained:

> The word prejudice implies an opinion held before the beginning of the trial. No such mental leaning is evident in the present case. Even though the judge is expected to have no bias at the beginning of the trial, he must, perforce, develop a bias at some point in the trial; for the decision at the conclusion of the trial is based upon the impressions, favorable or unfavorable, developed during the trial.

*Watson v. City of Jackson*, 448 S.W.3d 919, 933 (Tenn. Ct. App. 2014) (quoting *Spain v. Connolly*, 606 S.W.2d 540, 544 (Tenn. Ct. App. 1980)).

A trial judge is not completely insulated from a recusal motion, however, where it holds a bias that originated during the course of the proceedings. Rather, "[i]f the bias is alleged to stem from events occur[r]ing in the course of the litigation . . . , the party seeking recusal has a greater burden to show bias that would require recusal, i.e., that the bias is so pervasive that it is sufficient to deny the litigant a fair trial." *Runyon v. Runyon*, No. W2013-02651-COA-T10B-CV, 2014 WL 1285729, at *6 (Tenn. Ct. App. Mar. 31, 2014) (no perm. app. filed) (quoting *McKenzie v. McKenzie*, No. M2014-00010-COA-T10B-CV, 2014 WL 575908, at *1 (Tenn. Ct. App. Feb. 11, 2014) (no perm. app. filed)). This Court has described a "pervasive" bias as one that "reflect[s] an utter incapacity to be fair." *Groves*, 2016 WL 5181687, at *5. As such, "[j]udicial expressions of impatience, dissatisfaction, annoyance, and even anger towards counsel, the parties, or the case, will not ordinarily support a finding of bias or prejudice unless they indicate partiality on the merits of the case." *Id.* (citing *Alley*, 882 S.W.2d at 822).

As previously discussed, nothing in the record leads this Court to believe that the trial judge engaged in any ex parte communications **concerning** the pending matter with attorneys or parties to this case or any related matter. Accordingly, the record does not support the allegation that any alleged bias on the part of the trial court stems from information other than what the trial judge learned from participation in the case. *See Alley*, 882 S.W.2d at 821.

Appellants have also failed to show that such alleged bias is so pervasive as to deny Appellants a fair trial. *See Runyon*, 2014 WL 1285729, at *6. While Appellants allege that they have been denied "vital discovery" by the trial court's actions, stifling their ability to obtain a fair trial, as discussed above, adverse rulings are typically not sufficient to show a bias against one party. *See Alley*, 882 S.W.2d at 821. Moreover, Appellants have cited no law, nor has our research revealed any, in which adverse rulings, even if numerous and erroneous, were held to evidence a bias or prejudice so pervasive as to deny a litigant a fair trial. On the contrary, our research has revealed several instances where Tennessee courts have affirmed a trial court's denial of a motion

to recuse when faced with allegations that a trial judge's statements during trial coupled with adverse rulings warranted recusal, where there was no indication that the trial judge had prejudged the case in favor of one party. *See State v. Rimmer*, 250 S.W.3d 12, 38 (Tenn. 2008) (affirming the trial judge's denial of a motion to recuse despite the movant's argument that the trial court ruled against him in a "critical decision[]" concerning a continuance); *Cain-Swope v. Swope*, No. M2015-00872-COA-R3-CV, 2016 WL 7422781, at *5 (Tenn. Ct. App. Dec. 23, 2016) (holding that there was no impropriety created when the trial court ruled against one party after stating that he and the party's counsel would have to "agree to disagree on that"); *In re Samuel P.*, No. W2016-01592-COA-T10B-CV, 2016 WL 4547543, at *6 (Tenn. Ct. App. Aug. 31, 2016) (affirming the trial court's denial of a motion to recuse, despite allegations that the trial court made numerous erroneous rulings against the movant and had made a comment attributing the contentious nature of the proceedings to the movant); *State v. Lowe*, No. M2014-00472-CCA-R3-CD, 2016 WL 4909455, at *27–28 (Tenn. Crim. App. July 12, 2016) (affirming the trial court's denial of a motion to recuse where the trial judge threatened to remove the criminal defendant from the courtroom due to emotional behavior); *McKenzie v. McKenzie*, No. M2014-00010-COA-T10B-CV, 2014 WL 575908, at *7 (Tenn. Ct. App. Feb. 11, 2014) (affirming the trial judge's denial of a recusal motion even where the trial judge alluded to "the old saying about a lawyer who represents herself" and ruled against the litigant allegedly without authority); *Lowe*, 2013 WL 706318, at *3–4 (holding that the trial court did not err in denying a motion to recuse based upon one adverse ruling and the trial court's sometimes overly candid comments about his disagreement with counsel's recitation of facts); *Carney v. Santander Consumer USA*, No. M2010-01401-COA-R3-CV, 2015 WL 3407256, at *5 (Tenn. Ct. App. May 28, 2015) (affirming the trial court's denial of a recusal motion where the motion only made unsubstantiated allegations of bias and referenced the trial court's numerous denial of the movant's post-trial motion as evidence of the bias). *But see State v. Cobbins*, No. E2012-02025-CCA-10B-DD, 2012 WL 5266427, at *23 (Tenn. Crim. App. Oct. 25, 2012) (holding that the trial judge's numerous hostile comments toward the State, along with statements indicating it had prejudged certain motions, created an appearance of impropriety warranting recusal).

We cannot deny that we are troubled by the events in this case, including the trial court's repeated delay in disposing of motions and its clear violation of section 1.02 of Rule 10B. Moreover, we are particularly concerned with Mr. Nesmith's action in filing affidavits from court staff in support of his characterization of the May 20, 2016 hearing. Again, however, the court staff's characterizations of the events of May 20, 2016 appear to stem directly "from events occur[r]ing in the course of the litigation," rather than any extrajudicial knowledge. Accordingly, we reiterate that for any bias on the part of the trial judge and his staff to necessitate recusal, it must be so pervasive as to deny Appellants the right to a fair trial. *Runyon*, 2014 WL 1285729, at *6.

We have thoroughly reviewed the record in this case and conclude that Appellants have failed to meet their burden to show a bias so pervasive that it denies them their right to a fair trial. The record on appeal contains no indication that Judge Binkley has prejudged any of the issues in this case in favor of one party, despite the contentiousness of the proceedings among all participants. We agree that Judge Binkley did enter into a heated exchange with Appellants and their children at the May 20, 2016 hearing and was overly candid in his remarks regarding the presence of the children; however, Appellants have failed to show that this exchange, viewed in isolation, or in conjunction with the trial judge's multiple adverse rulings and delays, is evidence of a bias "so pervasive that it is sufficient to deny [Appellants] a fair trial," see *id.*, or that shows that Judge Binkley has an "utter incapacity to be fair." *Groves*, 2016 WL 5181687, at *5. Accordingly, Judge Binkley did not err in denying Appellants' recusal motions.

## CONCLUSION

The judgment of the Williamson County Chancery Court is affirmed and this cause is remanded to the trial court for further proceedings. Costs of this appeal are taxed to Appellants, Samuel C. Clemmons and Shannon N. Clemmons, and their surety.

_____
J. STEVEN STAFFORD, JUDGE